# CHARLESTON.

STEEL v. AMERICAN OIL DEVELOPMENT CO.

Submitted April 10, 1917.    Decided April 17, 1917.

1.  MINES AND MINERALS—*Oil and Gas Lease—Action for Damages.*

    The lessor in an oil and gas lease may maintain a suit in tres-
    pass on the case to recover damages for the injury sustained by
    him because of the failure of the lessee to drill wells necessary to
    save the oil on his land and prevent it from being drained by
    wells drilled on adjacent lands.   (p. 207).

2.  SAME—*Oil and Gas Lease—Action for Damages—Plaintiffs.*

    The damage sought in such a suit is for diminution of the roy-
    alties by reason of such drainage and all of the grantors in such
    lease must join as plaintiffs.   (p. 208).

3.  SAME—*Oil and Gas Lease—Action Against Assignee—Proof.*

    Where the lessor in an oil and gas lease seeks to recover against
    an assignee of the lessee named in such lease for failure to drill
    wells upon lessor's land to prevent drainage of the oil in said
    land through wells drilled upon adjacent lands, it is necessary
    for such lessor to prove the assignment and transfer of the lease
    to the defendant in the suit and that such defendant's operations
    on plaintiff's lands were under and by virtue of such lease.
    (p. 209).

4.  DAMAGES—*Evidence.*

    A verdict for damages based upon evidence which does not show
    with reasonable certainty that the complaining party was injured,
    or the extent of his injury, cannot be sustained.   (p. 209).

5.  MINES AND MINERALS—*Oil and Gas Lease—Breach—Action for
    Damages—Burden of Proof.*

    Points eight and nine of the syllabus of the case of *Grass* v. *Big
    Creek Development Company*, 75 W. Va. 719, followed and ap-
    proved.   (p. 213).

Error to Circuit Court, Tyler County.

Suit by Charles Newton Steele and others against the
American Oil Development Company and others.   Judgment
for plaintiffs, and defendants bring error.

*Reversed, verdict set aside, remanded.*

80 W. Va.

*Walter S. Sugden, Charles N. Kimball, Kemble White* and *Charles Powell,* for plaintiffs in error.

*G. D. Smith* and *Carl G. Bachmann,* for defendants in error.

RITZ, JUDGE:

This suit was instituted to recover damages for injuries claimed by the plaintiffs because of the failure of the defendant to drill oil wells on lands of the plaintiffs so as to prevent wells drilled on adjacent lands from draining the oil from plaintiffs' lands and thereby depriving the plaintiffs of the royalties thereon. Plaintiffs charge in their declaration that in the month of January, 1895, they made an oil and gas lease to one William Morris covering the tract of land owned by them in Tyler county and that the defendant by successive transfers of this lease became the owner thereof; that thereafter the defendant began to operate upon said land for oil and gas and drilled several wells thereon; that the said defendant was also the holder of oil and gas leases on adjacent lands, and that it drilled wells on these adjacent lands in such close proximity to the plaintiffs' lands that in order to prevent the oil under plaintiffs' lands from being extracted therefrom through these wells it was necessary to drill additional wells on plaintiffs' lands, which the defendant declined to do. The declaration claims that there is an implied covenant in the lease that the lessee would drill such wells as might be necessary to prevent the extraction of the oil from plaintiffs' land through wells drilled on other lands.

Upon the trial of the case, in answer to special interrogatories, the jury found that one such additional well should have been drilled by the defendant at one corner of the lands of the plaintiffs, and that by reason of the failure to drill this additional well plaintiffs' lands had been devastated of the oil thereunder by wells upon other lands, and that the loss to plaintiffs by reason thereof was fifteen hundred barrels of oil valued at twenty-two hundred and fifty dollars, for which sum the jury found a verdict, and upon which verdict the court rendered judgment. The first

ground relied upon by the defendant for reversal is that the form of action adopted by the plaintiffs in this case, to-wit, trespass on the case, is not a proper one for the breach of such an implied covenant as that relied upon for recovery, the contention being that the form of action should be in contract rather than in tort. It is quite true that an action in form *ex contractu* would lie in this case, but does this fact bar the plaintiffs from maintaining an action *ex delicto?* Wherever the defendant has done an act which involves a breach of a duty imposed upon him by law, or where he fails to do that which he is under legal obligation to do, and in either case injury results to another, such injured party may ordinarily maintain an action on the case to recover damages for such injury, even though he may also have his action *ex contractu* by reason of a provision in a contract between him and the defendant. *Moses* v. *Old Dominion Iron and Nail Works Company,* 75 Va. 95; 2 Minor's Inst. 1st. ed. p. 633; Taylor's Landlord and Tenant, §688.

Upon the trial of the case it appeared that the plaintiff Charles Newton Steele was the owner of the land covered by the lease, and that the other plaintiff, his wife, had no interest therein except her contingent right of dower. The defendant insists that she is improperly joined as a plaintiff, and that because of such misjoinder this suit should be dismissed.

The case of *Sandusky* v. *West Fork Oil and Natural Gas Company,* 63 W. Va. 260, was an action in assumpsit to recover oil and gas royalties. The lease was made by Sandusky and his wife jointly, but the suit was brought by Sandusky alone, and it was shown that he alone was the owner of the property. It was held in that case that she was a necessary party plaintiff, and that the suit would have to be dismissed because of her nonjoinder. The holding there is that the legal title to the royalties and rents arising from the lease is by the terms of the lease itself in the lessors jointly, and it matters not that one may not have any real interest therein, their joint interest is determined and fixed by the terms of the contract, and that conclusion seems to be well supported by the authorities cited. But it is stated

that a different rule applies where the action is in form *ex delicto;* that then only the owner of the corpus of the real estate covered by the lease should be a party plaintiff. The injury for which compensation is sought is the diminution of the royalties which plaintiffs should receive, and which they would receive but for the failure of the defendant to comply with the implied covenant contained in the lease, and if the husband and wife are so interested in the contract by its terms that they must both join in a suit in assumpsit to recover the royalties, how can it be said that they have not the same joint interest in a recovery of damages resulting from a wrongful act of the defendant which depreciated or reduced the royalties which they but for such act would have received? The contention in this case is that because of the failure of the defendant to do what it should have done the amount of royalties which would have been paid to the plaintiffs jointly has been reduced, and it must necessarily follow that if both of the plaintiffs were interested in the royalties, then they each have an interest in any recovery of damages for failure to do that which would produce those royalties.

As we have before stated, the declaration alleges that the lease made by the plaintiffs was to one William Morris, and that it had been successively transferred so that at the time of the operations thereunder the defendant was the owner thereof. On the trial of the case the plaintiffs introduced in evidence the lease executed by them to William Morris, but they introduced no evidence, either written or parol, to show the assignment and transfer of this lease to the defendant, as alleged in their declaration. This action is based upon the breach of an implied covenant contained in the lease. If the defendant is not a party to that lease, then this suit cannot be maintained against it. Its acts in drilling upon the plaintiffs' lands would be nothing but trespasses. There would be no obligation on the defendant to drill wells on plaintiffs' land in the absence of this implied covenant relied upon. In fact, unless the defendant did have the right to go upon the land and drill for oil under the lease it would be a trespasser if it undertook to drill wells

thereon for the purpose of preventing the drainage of plaintiffs' oil through wells on other lands. It is, therefore, necessary in order for the plaintiffs to recover in this case, that they connect the defendant with the oil and gas lease. They must prove that the same had been transferred to the defendant, and that its operations on their lands were under and by virtue of that lease. The averments in the declaration cannot be taken as proof. These averments must be supported by proper evidence. Archer on Oil and Gas, §6, p. 366; *Heller* v. *Dailey*, 28 Ind. App. 555.

Coming to the merits of this controversy, the defendant insists that plaintiffs have failed to show a state of facts justifying recovery. It says that the proof does not establish the fact that there has been drainage of oil from plaintiffs' lands by wells drilled upon other lands. It contends further, conceding that there has been drainage of some oil from the plaintiffs' lands by these wells on other lands, that it does not appear that in the exercise of sound judgment the defendant should be required to drill additional wells upon the lands of plaintiffs. Defendant insists that, even assuming that it is shown that oil from plaintiffs' lands has been drained therefrom, and such facts have been shown as impose upon the defendant the duty to drill wells on plaintiffs' lands to produce this oil therein and prevent the drainage of it through wells on adjoining lands, the evidence of the amount of plaintiffs' injury by reason thereof is not fixed by any fact, is uncertain and conjectural, and no more than nominal damages should have been allowed. It cannot be doubted that in order to the recovery of damages from a lessee in such a case as this it must appear from the evidence that it is reasonably certain that oil from plaintiffs' lands has been, or is being, drained by wells drilled on other lands. Of course, from the nature of the subject matter it is impossible to prove this with absolute certainty, but it is not impossible, nor is it difficut to prove such a state of circumstances, if they exist, as would reasonably lead to the conclusion that such was the fact. It would be not only possible but easy to show the character of the sands in which the oil was found on the adjoining lands. It could

also be easily shown what wells had been drilled on adjoining lands, how far they were from the lands of the plaintiffs, and how much oil had been produced therefrom. It could also be shown what area would probably be drained of the oil by a well drilled in the particular sand in which the wells were drilled on the adjoining land, and if such area so probably drained included a part of plaintiffs' land it might then be reasonably assumed that these wells on adjoining lands were draining oil from plaintiffs' lands.

However, it must be remembered that the obligation of the lessee does not require him to drill wells wherever there is a reasonable expectation that some oil may be found, but it must appear that there is a reasonable expectation that the returns to the lessee from the oil which will be produced from the drilling of such a well will at least compensate him for the expense incurred in drilling the well and producing the oil. This cannot be left to conjecture, but must have for its basis some substantial proof. In a case like this it could be shown what would be the cost of drilling a well through the particular sand in which the oil was found on the adjacent lands; what would be the approximate cost of producing and marketing the oil therefrom; what the production was from wells drilled in close proximity to this land; and it might be reasonably assumed, if wells in close proximity produced sufficient oil to compensate the lessee in drilling them, that a well drilled upon plaintiffs' land would do likewise. However, in determining this question all of the elements which would have a tendency to influence and guide the judgment of one producing oil must be considered. The fact that wells drilled in close proximity proved to be barren would be a material consideration, as well as the fact that productive wells were so drilled. In this case it is shown that there are barren wells drilled in close proximity to the plaintiffs' land at the point at which it is contended defendant should have drilled a well. It is also shown that productive wells were drilled in such close proximity. It is not shown, however, by any satisfactory evidence what would be the cost of drilling a well at the point indicated nor is it shown, or attempted to be shown, that even though a well

were drilled on plaintiffs' land to prevent the drainage of oil therefrom, and it produced as much oil as the largest well drilled on the adjoining lands, this would be sufficient to compensate the lessee for the expense of drilling the well, maintaining the same and marketing the oil therefrom. We cannot assume that this would be the case, particularly when the matter is so easy to be proved. Nor is it shown in this case the extent to which a well pumped and worked as the wells on the lands adjoining the plaintiffs were pumped and worked would drain the oil from plaintiffs' land. There must be those who are acquainted with the nature of this sand in that locality, and who could from their experience give some reasonable data or information from which it could be determined with reasonable certainty that the wells being operated on adjoining lands were draining plaintiffs' oil, and the extent thereof. In the absence of such a showing, how can it be determined what damages were inflicted upon the plaintiffs? It may be said that the jury would be justified in assuming that a well drilled on plaintiffs' land at a certain point would yield the same quantity of oil produced from a well drilled on adjoining land in close proximity, but even if such assumption be justified there is nothing to show what part of this oil is drained from the lands of the plaintiffs and what part of it comes from the tract of land upon which the well is drilled. It might be shown by those familiar with the production of oil in this sand that a well drilled through it, pumped as these wells were pumped, would in all probability drain an area of so many acres, and that a given percentage of this area so drained is the lands of the plaintiffs. If such evidence were introduced it would perhaps form a basis upon which the jury might determine with some reasonable certainty how much of plaintiffs' oil had been drained by the wells on adjacent lands. It is difficult to determine in this case how the jury arrived at its conclusion that fifteen hundred barrels of oil were lost to the plaintiffs by reason of the drilling of these wells on adjacent lands. There have been drilled upon plaintiffs' lands three producing wells, and there is no contention but that these wells were well located for the production of the

oil in the lands.   No doubt it is difficult to prove with certainty just how much oil was taken from plaintiffs' lands by the drilling of the wells complained of upon adjoining lands, and whether plaintiffs can establish their injury in this regard with such certainty as is required in order to permit a recovery we cannot say, but we feel constrained to hold that the evidence introduced in this case falls far short of showing that there was any oil drained from plaintiffs' lands by wells drilled on adjacent lands; that the lessee might expect reasonable returns from a well drilled on plaintiffs' lands, and the extent of the injury suffered by the plaintiffs from the drainage of oil from their lands, if they sustained any injury thereby.   This Court has passed on questions similar to this in many cases.   In *Moore* v. *Heat & Light Company,* 65 W. Va. 552, it was stated in the first point of the syllabus: "In an action for tort, the plaintiff bearing the burden of proof, a verdict for him cannot be found on evidence which affords mere conjecture that the liability exists, and leaves the minds of jurors in equipoise and reasonable doubt.   The evidence must generate an actual rational belief in the existence of the disputed fact."

In *Hall* v. *South Penn Oil Co.,* 71 W. Va. 82, Judge POFFENBARGER, speaking of the duty of the lessee to sink additional wells, at page 84, says:   "The number and location of wells, requisite to the performance of this covenant, depend upon the character of the leased territory.   The area of the lease does not determine the number, nor is their relation to one another governed by any fixed rule.   Whether, after the discovery of oil or gas, by means of the initial or experimental well, there is a duty to sink additional wells, depends upon the probability, arising from the circumstances surrounding the property, that an additional well or wells will be profitable to the lessee.   He is under no duty to operate at a loss to himself to make the premises profitable to his lessor.   It is only under circumstances indicative of mutual profit—profit to lessee as well as lessor—that the duty to operate devolves."

In *Jennings* v. *Southern Carbon Co.,* 73 W. Va. 215, Judge LYNCH discussing the same subject at page 221 says:

"Hence the practically universal interpretation of oil and gas leases is that, where the contract does not expressly state what shall be done by the lessee, there arises the legal implication that, if the latter finds one or both of these minerals on a lease operated by him, or if either he or other operators find them on adjoining lands, he will drill as many wells as will afford sufficient protection against drainage, and otherwise so develop the leased premises as to serve the mutual benefit of both lessor and lessee."

"The necessity for such interpretation is readily apparent when the peculiar and distinctive characteristics of these mineral substances are considered—their illusive and migratory nature, their disposition to travel in the direction of least resistance, and to find vent through the most readily accessible opening. How far they travel to effect escape from the pressure under which they are confined, is problematical. No one does or can know the extent, nor is he even able to approximate it with any reasonable degree of certainty. Hence, we say that, although the judgment of one experienced in developments under leases of this character is controlling, when compared with that of the landowner, who is without such experience, yet his judgment, if fraudulently exercised or exercised solely to promote his individual selfish interest, thereby ignoring the interests of the lessor, such judgment, being fraudulent, will not avail. To serve him, it must conform to that judgment generally exercised by other operators under similar circumstances and conditions, and in view of the real purpose and intention of the parties when entering into the agreement."

The same question was under consideration by this Court in the case of *Grass* v. *Big Creek Development Company*, 75 W. Va. 719, in which it was held in the eighth and ninth points of the syllabus: "To entitle him to damages for unreasonable or arbitrary evasion of implied covenants of an oil and gas lease, nothing therein preventing, for diligent prosecution of operations, either mineral being found in paying quantities on the premises, plaintiff assumes the burden of showing, and by clear and convincing proof must to avail him show, by witnesses having experience and skill

and engaged in similar operations, that the lessee, having due regard for the advantage and profits of himself and lessor, has not, surrounding circumstances and conditions being considered, exercised ordinary diligence in conducting such operations. If he has, plaintiff can not recover.''

''Among such circumstances and conditions are the situation of the parties; the character of the mineral products; the nature of the oil-bearing sand, whether dense or soft and porous; developments on contiguous lands, whether by same or different operators; cost of drilling; proximity to market, and facilities for marketing; current prices, whether high or low; location of the lands, and such other conditions attendant upon the operations as may explain necessity for prompt, or excuse for delayed, action in prosecuting such developments. And if, considering these, the operator has exercised that reasonable diligence and sound, practical judgment common to and exercised by operators of ordinary prudence and experience in the same business under the same or similar circumstances and conditions, plaintiff cannot recover.''

These quotations sufficiently indicate the character of proof required in order to justify a recovery in a case like this. In the case at bar the showing made falls far short of the requirements there laid down. We have the testimony of three men in this case who have done some drilling in this oil field to the effect that in their judgment an off-set well should have been drilled on Steele's land. They do not give the facts upon which they base this conclusion; they do not indicate the extent to which the oil in Steele's land was in their opinion affected by the drilling of these wells on adjoining lands. No witness indicates what expenditure would be required for the drilling of such a well on the lands of the plaintiffs, nor does any witness say that there is a reasonable probability that such a well, if drilled, would have been profitable to the lessee. There is no witness who testifies as to what would have been the probable production from such a well from the standpoint of consideration of all of the surroundings. It is true the plaintiff Charles Newton Steele testifies that in his opinion he was damaged twelve

thousand dollars. How he arrives at this conclusion he does not say. As before stated, there have been three wells drilled upon the plaintiffs' farm, and the total royalties received by Steele from these wells up to the institution of this suit amounted to the sum of 1561.37 barrels. Applying to this the price applied by the jury (and it appears from the record that this price per barrel is about correct), Steele has so far received less than twenty-five hundred dollars in royalty from the three wells drilled on his lands. It is certainly highly conjectural and imaginative to assume that there is any reasonable basis in this case for his statement that his damages would amount to twelve thousand dollars for failure to drill the off-set wells complained of when we consider that the total royalties received by him from the three wells which it is conceded were properly located have been very much less than that.

The defendant objects to certain instructions given by the court to the jury at the instance of the plaintiffs, and particular stress is laid upon instruction No. eleven. This instruction tells the jury that if the defendant was the owner of the lease upon plaintiffs' farm and also of a lease upon the adjoining lands, and upon such adjoining lands drilled wells in close proximity to the plaintiffs' line which it refused to off-set by drilling wells on plaintiffs' lands when demand was made upon it therefor, in order for the defendant to excuse itself from off-setting such wells on such adjoining lands it must show by a preponderance of the evidence that it acted with due diligence, taking into consideration the situation of the parties, the character of the mineral products, the nature of the oil-bearing sand, whether dense or soft and porous; developments on contiguous lands, whether by same or different operators; cost of drilling; proximity to market, and facilities for marketing; current prices, whether high or low; location of the lands and such other conditions attendant upon the operations as may explain necessity for prompt, or excuse for delayed action in prosecuting such development. It is insisted that this instruction relieves the plaintiffs of the duty which is placed

upon them by the law, and transfers this obligation to the defendant.

It is contended that the obligation rests upon the plaintiffs to show that the lessee did not act with due diligence, taking into consideration the matters referred to. This was the holding of this Court in the case of *Grass* v. *Big Creek Development Company,* 75 W. Va. 719, in point eighth of the syllabus above quoted. We think the court erred in giving this instruction. It was a necessary element of the plaintiffs' case to show the facts which this instruction says must be shown by the defendant in order to prevent a recovery. This instruction would allow the jury to assume without proof that the facts existed, the existence of which are necessary in order for a recovery. Such is not the law. Where a recovery of damages is conditioned upon the existence or non existence of a certain state of facts, he who seeks such recovery must show affirmatively the things essential thereto.

It is also assigned as error that the court admitted the lease executed by the plaintiffs to William Morris in evidence, for the reason that the declaration averred that the said plaintiff Charles W. Steele, being seized of the lands referred to, together with his wife, Rosa Steele, executed a lease to William Morris, which is the lease upon which reliance is had in this case. Suit was brought in the name of Charles Newton Steele and Rosa Steele. The lease is executed by Newton Steele and Rosa Steele, his wife. It is quite clear that this averment in the declaration that it was executed by Charles W. Steele is clerical or typographical, and should be corrected upon another trial of the case.

The judgment of the circuit court of Tyler county complained of will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed, verdict set aside, remanded.*