## DILLON v. HOLCOMB et al.

### No. 776.

District Court, W. D. Louisiana,
Shreveport Division.

May 15, 1939.

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Shreveport, La., for plaintiff.

Foster, Hall & Smith, of Shreveport, La., for defendants.

DAWKINS, District Judge.

Plaintiff brought this suit to annul a mineral lease because of the alleged violation of certain provisions thereof, and, in the alternative, first, for an injunction to restrain production from adjoining property because of alleged drainage, and secondly, for damages.

The answer denies the material allegations upon which recovery is sought and

pleads specifically conditions which it is claimed justified the course pursued by defendants.

The plaintiff, Arno R. Dillon, claimed the ownership of an irregular tract of land, embracing 40 acres in round figures, situated in section 4, township 23, north range 16 W, in what is know as the Rodessa oil field of Caddo Parish, as per sketch appearing below:

Under a compromise of litigation with some of the defendants, a strip measuring 6.004 acres was conveyed by Dillon in two separate deeds, embracing approximately three acres each to Pauline Zylkes et al. and the latter's attorneys, Marion K. Smith et al. The tract so conveyed is shown in a single heavily shaded body at the bottom of the south end of the sketch, bearing the legend, "6.004 ac. Smith Fee."

Thereafter, on the 10th of October, 1936, Dillon executed a surface lease covering the entire remaining portion of the tract (approximately 34 acres) to one O. G. Collins, in which it was provided that there should be no drilling on the area embraced within the central portion thereof indicated by diagonal lines, for the reason the said lessee of the surface rights intended to erect gasoline extraction and carbon plants thereon.

On April 20, 1937, following, Dillon executed to and in favor of the defendants, E. D. Holcomb and D. Thomason, a mineral lease which, of course, was affected by the restriction in the previously recorded surface lease to Collins. The mineral lessees were required to drill within 60 days and applied to the Conservation Department of the State for a permit for that purpose, locating the well within the approximate center of a 20 acre plot, having for two of its boundaries the Northern and Eastern lines of their lease. This application was dated June 19, 1937. Efforts were made by certain of the attorneys owning one of the three acre tracts, both on behalf of themselves and for Zylkes et al. owning the other, to have the plaintiff, Dillon, consent to pool with them 4 acres off the South end of said 34 acre tract to make up the minimum requirement of 10 acres necessary in order to obtain a permit for drilling. Dillon declined to enter the pool. On July 1, 1937, all the owners of this 6 acres (including both 3 acre tracts) executed a lease to Holcomb and Thomason. There was evidently some understanding between these last mentioned owners and the lessee before the execution of the lease, because Holcomb and Thomason made application to the Department for a permit to drill thereon on June 28, 1937, two days before the lease was made. The permit to drill on Dillon's land was granted June 24, 1937, and that upon the Zylkes-Smith tract on June 29. The well upon the first lease was drilled actually 104 feet further South and a 60 feet East of the location indicated in the application for the permit; while that on the Zylkes-Smith property was drilled 30 feet South and 3 feet West of the point indicated in the application, or 70 feet instead of 40 feet South of the Southern boundary line of the Dillon 34 acre tract. The Dillon well was 656 feet from this same line.

Dillon never at any time consented to pool any portion of his land with that of the Zylkes-Smith group. His lease upon the 34 acre tract stipulated a consideration as follows: $7,500 cash which was paid, the usual 1/8 royalty, with an additional over-riding royalty of 1/16, as long as more than 3,000 barrels per month were produced from the lease, which was to be reduced to 1/32 when production fell below that figure, with further payment of $7,500 to be made only from oil produced out of another 1/16 of the working interest.

The lease by Zylkes-Smith to the same lessees provided only the usual 1/8 royalty. It was for this reason that Dillon insisted he should be paid on the basis of the royalty provisions or consideration in his own lease, and refused to join in any arrangement by which he should receive only his portion of a 1/8 royalty.

In applying for the permit for the Zylkes-Smith well, Holcomb and Thomason, being the lessees of the entire Dillon tract of 34 acres, indicated to the department that they would include a strip of 4 acres off the South end of the Dillon tract, marked on the Sketch below as "4.00 ac, allocated to the Smith No. 1."

It is undisputed that neither tract will ever pay the cost of drilling the well, after deducting the royalties.

It has been the policy of the Conservation Department to refuse a permit for less than 10 acres; to encourage those owners whose lands formed a part of a larger tract under prior ownership to pool, if necessary, and to limit permits to tracts whose lengths were not more than twice as much as their widths. The lands adjoining the Zylkes-Smith 6 acres on the South and East were being considered for pooling with other owners or lessees, and the Conservation Department recommended the issuance and actually issued its permit to Holcomb and Thomason on the basis of 4 acres off the South end of the lease from Dillon, plus the Zylkes-Smith tract, or a total of approximately 10 acres. The well was drilled and a full 1/8 royalty has been paid to the Zylkes-Smith group, but Holcomb and Thomason offered to settle with Dillon by paying him 4/10 of a 1/8 royalty to cover the 4 acres out of his lease, which he declined.

If the Conservation Commissioner had, under the proper regulations, issued a permit to drill upon the Zylkes-Smith 6 acres alone, they or their lessees could have drilled thereon without the plaintiff

having any right to complain, unless the facts were such that his lessees were bound, under the implied obligations of their contract, to protect his property from drainage. If the well actually drilled was sufficient to reasonably produce and save all the oil to which the plaintiff was entitled from under his lands, then the lessees were not required to drill others to off-set every well sunk on surrounding property, if it entailed an expenditure greatly in excess of what could be reasonably expected to be recovered from production. The size of the tract, of course, has a material bearing upon the matter. The rules of the Department requiring drilling of a tract of the size for which the permit was issued on Dillon's land (20 acres) as near the center as possible was on the theory, no doubt, that this would recover its fair share of the oil. The lessee was not required to suffer a substantial loss in drilling another well to off-set it on the Zylkes-Smith tract. Of course, if the production in this particular area had been such that large quantities of oil were and could be produced from all wells, sufficient to pay the cost of drilling and a reasonable profit to the lessor and the lessee, then the latter would have been bound to do what reason and common-sense dictated, even if it required the drilling of a number of wells. No such condition is shown by the facts here, and I think the plaintiff has failed to establish a breach of the lease on the alleged failure to protect the property from drainage. Roberts v. United Carbon Co., 5 Cir., 78 F.2d 39; Somners Oil and Gas, Vol. 2, p. 371, Sec. 414; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069; Steel v. American Oil Development Co., 80 W.Va. 206, 92 S. E. 410, L.R.A.1917E, 975; Amerada Pet. Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385; Cowden v. Texas Development Co., 5 Cir., 89 F.2d 947; Keenan v. Texas & Pacific Production Co., 10 Cir., 84 F.2d 826.

■ Proration and pooling under Conservation laws, are of comparatively recent origin, and neither counsel has cited a case, nor has the Court been able to find one, involving a situation similar to that presented here, i. e., where the lessee, in operations upon adjoining properties was the same and the royalty provisions were different. The lessor had, by his own act, in leasing the surface and restricting the area upon which drilling could be done created a condition where the Conservation Department could and did apply its regulation that there should not be allowed a permit to acreage whose length was more than twice its width. This left the matter, in so far as further drilling upon plaintiff's land was concerned, to be handled in some other way. Undoubtedly, plaintiff had the right to exact from his own lessee the full measure of his contract, as to royalties, with respect to any production from wells drilled on his own lands. The question is, can he insist upon the application of this stipulation to production from other and adjoining lands, the ownership of which is in third persons, simply because his lessee, under the circumstances of this particular case and the limitations of the permit by the Conservation Department, found it necessary to pool a small area, 4 acres with the 6 outside, to gain a permit to drill upon the latter? I think not. The fact that the lessees in both instances were the same, I do not think placed any greater obligations upon them than would have been the case had the well on the adjoining property been drilled by another lessee under a separate lease. The issue, I believe, must turn upon the point as to whether the plaintiff, the lessor, has been prejudiced by what was done because of the failure of the lessees, within the doctrine of the above case, to protect his property from drainage. The addition of 4 acres from any other adjoining tract, it appears would have produced little or no different effect upon plaintiff's land than was the case here. I am, therefore, constrained to hold that plaintiff is entitled to recover only from the defendants, Holcomb and Thomason upon the basis of the royalty which was stipulated in the Zylkes-Smith lease. However, since these lessees were able to pool this 4 acres with that tract solely because of their lease from plaintiff, I think equity requires that he should be paid his proportionate share of the stipulated royalty, that is, 4/10 of 1/8. This is the only feasible way to compensate for such injury as he may have suffered through drainage.

What has been said above with respect to the reasonableness of drilling additional wells on plaintiff's land, I think, applies equally to the claim for damages and the facts do not warrant a recovery.

I therefore conclude that plaintiff should have judgment against the Defendants, E. D. Holcomb and D. Thomason, for 4/10

942

of ⅛ of the value of the oil produced from the Zylkes-Smith well and that his demand against the other defendants, as well as all other claims, should be rejected.

Proper decree should be presented.