MILLETTE, et ux. *v.* PHILLIPS PETROLEUM Co. et al.

In Banc. Nov. 6, 1950.

No. 37584 (48 So. (2d) 344)

R. L. Netterville, Wm. F. Riley, L. A. Whittington and Berger & Callon, for appellants.

**Laub, Adams, Forman & Truly,** for appellees.

692

**Alexander, J.**

Appellants executed on May 18, 1941, a mineral lease containing the following provision: ''In the event a

well or wells producing oil or gas .in paying quantities should be brought in on adjacent land and within one hundred fifty (150) feet of and draining the leased premises, or acreage pooled therewith, lessee agrees to drill such offset wells as a prudent operator would drill under the same or similar circumstances.'' The lease is what is known as an ''unless·lease'', and provides for a primary term of ten years, and by mesne conveyances was assigned to appellee on August 27, 1945.

In September 1948, appellee, as lessee, drilled a producing oil well on an adjoining tract known as the Artmann tract, which well is about 570 feet from appellant's land. Likewise, producing wells were brought in by appellee on other lands leased by it from others, to wit: on the Oliver Hence tract and the Carter tract, which wells are respectively 1,300 feet and 580 feet from the lands leased to appellee by appellants.

On January 8, 1949, appellants notified appellee that their lands were being drained of oil by production on the adjoining tracts and demanded protection against such depletion. The lessee disclaimed responsibility and refused, in reply to a letter from lessors dated February 25, 1949, to surrender the·lease. Delay rentals were accepted by lessors in May 1949.

The foregoing facts were alleged in a bill filed by the lessors September 8, 1949, praying for cancellation of the lease and for damages from the drainage of oil beneath their lands. An amendment added a charge of fraud in the payment of the delay rental in May 1949, at which time, it is alleged, the lessee knew of the fact of such drainage. A duty in the lessee to drill an offset well on the lands in suit was asserted. A demurrer to the bill was filed and sustained, and the complainants having refused to plead further, the bill was dismissed, whence this appeal.

The facts, as for our present purposes admitted by the demurrer, raise the question whether drainage of a lessor's lands by a lessee of an adjoining tract is such

a deviation from the requirements of good husbandry as to require of the lessee, common to both tracts, a development of the drained acreage at the risk of liability for a failure so to act.

We first encounter the application of the quoted obligation which requires the drilling of an offset well or wells. The provision is specific and limits such obligation to cases where a producing well or wells have been completed in paying quantities within 150 feet of and are draining appellant's lands.

We need not piece out the extent of lessee's duty in this respect by sheer reasoning. The subject of offset wells is expressly provided for in the lease, and there are evidences in the lease itself that its contents were examined and substantial corrections made in the printed form. The parties were competent to contract with regard thereto, and there is no room for an interpretation of its unambiguous provisions, much less of its nullification by supposed contrary implications. The producing well closest to appellants' lands is 570 feet. The limitation of such duty on the part of the lessee to such wells as are within 150 feet precludes resort to an implied covenant in respect of a development by the drilling of an offset well on the lands of appellant. Lloyd's Estate v. Mullen Tractor & Equipment Co., 192 Miss. 62, 69, 4 So. (2d) 282; Hutchins v. Humble Oil & Refining Co., Tex. Civ. App., 161 S. W. (2d) 571; Brimmer v. Union Oil Co., 10 Cir., 81 F. (2d) 437, 105 A. L. R. 454, certiorari denied 298 U. S. 668, 56 S. Ct. 833, 80 L. Ed. 1391: 24 Am. Jur., Gas & Oil, Sec. 42; Summers, Oil & Gas, Vol. 2, pp. 300, 319; Merrill, The Law Relating to Covenants Implied on Oil & Gas Leases, Sec. 27, p. 81; Glassmire, Oil & Gas Leases & Royalties, (2nd Ed.), Chap. XIII, p. 243; Texas Law Rev., Vol. 11, pp. 399, 435. As to this obligation, the payment of the rentals by the lessee and their acceptance by the lessor preserves the option of the lessee to develop the lands in suit by actual drilling.

We conclude therefore that the bill stated no ground for equitable relief insofar as a duty to drill offset wells is concerned.

We proceed next to a consideration whether there exists a duty in a lessee to protect the interests of his lessor against a depletion of the lessor's lands by the affirmative act of the lessee upon adjacent property.

██ ██ The public policy of our State with regard to the development of its mineral resources is expressed in Sec. 1, Chap. 256 of the Laws of 1948: "It is hereby declared to be in the public interests . . . to safeguard, protect and enforce the co-equal and correlative rights of owners in a common source or pool of oil and gas to the end that each such owner in a common pool or source of supply of oil and gas may obtain his just and equitable share of production therefrom; and to obtain, as soon as practicable, consistent with the prohibition of waste, the full development by progressive drilling of other wells in all producing pools of oil and gas or of all pools which may hereafter be brought into production of such, within the state, until such pool is fully defined."

It is elemental that parties may not contract contrary to expressed public policy so that while the express provision regarding the drilling of offset wells may be upheld, there remains a fundamental principle founded as well in equity as in policy that an owner or lessor is entitled to reasonable protection against the loss of mineral resources in his lands. ██ ██ The express provision here involved absolved the lessee from meeting his duty to the lessor by capturing lessor's oil in situ through wells drilled on lessor's lands. The equitable duty, existing as well under implication, to conserve the mineral resources of lessors or to refrain from depletory act survives unimpaired. Hughes v. Busseyville Oil & Gas Co., 180 Ky. 545, 203 S. W. 515, 518.

For the purposes of this appeal, we accept as a fact that the appellee, by the drilling of these producing wells, has been and is now draining the oil from the ad-

joining lands of appellee. So that there is presented for decision the question whether the implied duty of a mineral lessee to conserve the interests of its lessor extends to protection against, or a duty to compensate for, its own act of drainage.

There is an implied covenant in a lease of oil property that the lessee will do nothing to impair the value of the lease, and must use reasonable care to protect lessor from damages or loss by the affirmative act of such lessee. This implied obligation has been extended to include, in the absence of express stipulation, a duty to drill offset wells if practicable and profitable. Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., 180 Okl. 419, 69 P. (2d) 624; Humphreys Oil Company v. Tatum, 5 Cir., 26 F. (2d) 882; Indian Territory Illuminating Co. v. Rosamond, 190 Okl. 46, 120 P. (2d) 349, 138 A. L. R. 246; Steele v. American Oil Development Co., 80 W. Va. 206, 92 S. E. 410; Texas Pac. Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S. W. (2d) 1031; Carper v. United Fuel & Gas Company, 78 W. Va. 433, 89 S. E. 12, L. R. A. 1917 A, 171; Trimble v. Hope Natural Gas Co., 113 W. Va. 839, 169 S. E. 529; Orr v. Comar Oil Co., 10 Cir., 46 F. (2d) 59.

We cite these typical cases merely as stepping stones to the conclusion that protection by some feasible means is requisite. Such relief in the instant case may not be had by cancellation of the lease, Summers Oil & Gas, Vol. 2, Sec. 397; Glassmire, op. cit., supra, Sec. 65; Freeman v. Magnolia Pet. Company, Tex. Civ. App., 165 S. W. (2d) 111; 24 Am. Jur., Oil & Gas, Sec. 60, p. 565, or by compelling the drilling of offset wells.

Although oil is a fugacious product and ordinarily belongs to the producer who captures it upon his own lands, yet when such producer is under an obligation to do nothing to destroy or deplete the lands of his lessor, he may not with impunity impair the value of his lessor's property. Such an obligation gains equitable recognition when substantial drainage is caused by

the lessee himself. This responsibility is separable from a duty to drill offset wells, and ▮▮ an express covenant which absolves the lessee from this method of development does not relieve the lessee of liability for substantial drainage by him. R. R. Bush Oil Co. v. Beverly-Lincoln Land Co., 69 Cal. App. (2d) 246, 158 P. (2d) 754; Humphreys Oil Co. v. Tatum, supra; Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., supra; Carper v. United Fuel & Gas Co., supra; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, with extensive annotation in 19 A. L. R. at pages 437, 450; Glassmire, op. cit., supra, Sec. 65, p. 247. The reasoning of these authorities is not here reproduced, but we are content to quote from Geary v. Adams Oil & Gas Co., D. C., 31 F. Sup. 830, cited with approval in the R. R. Bush Oil Co. case, supra [69 Cal. App. (2d) 246, 158 P. (2d) 757] as follows: "Looked at solely from the defendant's point of view, the location of a well in the southeastern part of the lease perhaps would not have been a prudent operation in view of defendant's belief that, though it might pay out, the chances of making a profit were very questionable. If the defendant had no interest in the adjoining leases on the north and south, it would seem that its defense, based on the foregoing facts, might be sound. But here the mind is haunted by the fact that the defendant is the beneficiary of the oil drained from plaintiff's land by the wells on the north and south which belong to the defendant. It has not only been saved the cost of drilling, equipping and operating a protecting well but it gets the oil anyway without plaintiffs being paid for it."

▮▮ We hold therefore that the bill states a cause for equitable relief by way of compensation for oil drained by lessee from lands leased to it by appellants. We now examine the extent of such liability.

▮▮ The payment and receipt of delay rentals is not a substitute for royalties. It is the consideration for delay in actual development. Steele v. American Oil

Development Co., 80 W. Va. 206, 92 S. E. 410; Trimble v. Hope Natural Gas Co., supra.

The primary purpose of this and similar leases is an early and profitable development of the mineral resources. 24 Am. Jur. Oil & Gas, Sec. 42; Merrill, op. cit., supra, Secs. 27, 34; Glassmire, op. cit., supra, Sec. 65. Conventionally, this is by drilling, so that such leases constitute both a privilege and a duty to drill. In this form of lease, the lessee retains an option to drill or surrender the lease but is protected against compulsory forfeiture, for failure to develop, by the privilege of extending the period of option by prompt and successive payments of annual rentals. By these he purchases the right to delay actual development, but not an acquittal of such obligations as are read into the lease by mutual understanding, equitable necessity or public policy. The specific provision above quoted exhausts its efficacy and relevancy in releasing the lessee from a duty to explore by drilling. But for this express agreement the right to demand protection may well have had plausible support. See 24 Am. Jur., Gas & Oil, Sec. 43.

The purported tender back by the lessor of the rentals paid and accepted in May 1949 brings into view the extent of the obligation of the lessee to protect the lessor against loss by drainage caused by the latter. We need not consider the effect of the receipt of rentals as a waiver of the right to drill offset wells. The close question is whether a receipt of delay rentals constitutes a waiver of all rights to demand compensation for damage theretofore caused.

We are of the opinion that the acceptance of annual delay rentals, being knit to the duty to drill, and the right to delay operations, is apart from, and not relevant to, the duty to protect against drainage as such. Authorities which debate the existence of an estoppel against a demand for actual exploration are not found pertinent even as analogies.

The bill, as amended, alleges a misrepresentation by the lessee as to necessity for, or practical advantage of, drilling an offset well; that the lessee knew, but the lessor did not, of the fact of drainage. Such allegations if proved may import into the case some defenses based upon estoppel. We do not, however, so adjudicate but state only that we do not hold that a lessor may not be estopped by conduct or held, under proper circumstances, bound by some waiver.

What we do hold, however, is that the acceptance of the delay rentals in May 1949 does not per se estop the appellants to claim damage by way of waste caused by provable drainage through the affirmative action of their lessee. By repetition, we emphasize that the option to defer actual drilling by the payment of annual delay rentals affects only the specific right which such rentals are designed to purchase. Acceptance of such rentals is relevant solely to the duty to drill; they are not compensation for waste or depletion. Under this form of lease, the lessor may drill wells or pay rentals, but on the other had he must prevent drainage or pay damages.

We are not of course concerned with the difficulty of satisfactory proof of resultant damage. We go no further than to preserve to the appellants their right to show a clear and substantial damage caused by the direct acts of their present lessee.

The demurrer ought to have been overruled.

Reversed and remanded.