SMITH, Justice,
for the Court:
The appeal in this case is from a decree entered by the Chancery Court of Rankin County awarding damages to appellees, Reginald H. Allen (and others), royalty interest owners, as lessors of a tract known as the “Allen 40”, against appellants, America Southwest Corporation, (and others), owners of the “working” interest in the tract under an oil and gas lease.
After an extended evidentiary hearing the chancellor found that a producing well had been drilled within 150 feet of the west boundary of the “Allen 40” and was draining one-half of its production from oil which underlay the Allen tract. He held that a duty rested upon appellants, as owners of the working interests under the lease, to drill an offset well to prevent such drainage and that they had failed and declined to do this. As a result of this breach of duty, the chancellor found that appellees as royalty interest owners, had been damaged, that they were entitled to recover from appellants, and that thé amount of the recovery would be computed on the basis of the *1299 royalty clause of the lease on.an amount oil equal to one-half of the oil produced by the well located on the adjacent property known as the Boone 1-A. He also held that appellees were entitled to recover a further sum as damages for future drainage, by the Boone 1-A, projected approximately 20 years into the future during the anticipated productive life of the adjacent well. In addition, he awarded surface damages against appellants in the sum of $1,450.00. of
The evidence touching the controlling issues was irreconcilably conflicting. This was particularly true as to whether in fact, the Boone 1-A, drilled within 150 feet of the west boundary of the Allen 40 and a good producer, was or was not draining oil from a pool partly underlying the Allen tract. The chancellor’s finding that it was, in fact, draining the Allen tract is amply supported by credible evidence and, although contradicted in a number of particulars by witnesses for appellants, it is impossible for this Court to say from the record that his finding was manifestly wrong. The issue was one of fact and properly was for determination by the chancellor. Shell Oil Company v. James, 257 So.2d 488, 496 (Miss.1971).
In Monsanto Chemical Company v. Sykes, 245 Miss. 207, 223, 147 So.2d 290, 297 (1962), this Court stated the rule:
The obligations imposed upon appellants [lessees] by the implied covenant is designed by equity to require fair and reasonable efforts on the part of the lessees to prevent drainage. Equity neither requires improvident actions on the part of lessees nor permits lessees to deal unfairly or unreasonably with lessors. It recognizes that duty is measured by what is reasonable under the circumstances.
(Emphasis added).
The chancellor found that, under the circumstances in evidence in this case, a prudent operator would have been on notice that the oil produced by the well known as Boone 1-A drilled within 150 feet of the west line of the Allen tract and a good producer, was, in fact, draining oil from the pool which underlay, in part, the Allen 40, that appellants also had actual notice of such drainage, and that they failed and declined to act as prudent operators should have acted by drilling a protective well on the Allen 40 to offset such drainage, although requested to do so by appellees. The chancellor held that, consequently, the duty owed .to the royalty owners (appellees) by appellants to drill an offset well had been breached so that appellees became entitled to recover damages for losses sustained. These findings of fact are supported by credible evidence and the chancellor’s conclusions of law are correct.
The chancellor found that the appel-lees had suffered damages which had accrued to the date of the trial in the sum of $58,962.50 computed on the basis of the royalty specified in the lease on one-half the production of the Boone 1-A. This action of the chancellor was justified by the evidence and was in keeping with decisions of this Court and will be affirmed. Shell Oil Company v. James, 257 So.2d 488 (Miss.1971); Southwest Gas Producing Company, Inc., Et al. v. A. D. Seale, Et al., 191 So.2d 115 (Miss.1966); Phillips Petroleum Company v. Millette, 221 Miss. 1, 72 So.2d 176 (1954); Millette v. Phillips Petroleum Company, 209 Miss. 687, 48 So.2d 344 (1950).
A majority of the judges concur in affirming this award.
Likewise a majority concurs in holding that the chancellor’s award of $1,450.00 as surface damages was based on conflicting evidence and must be affirmed.
The chancellor then proceeded to go further. On the basis of expert testimony damages expected to accrue in the future (until 1995) by reason of future drainage by Boone 1-A were awarded, the chancellor, as stated, having found that the Boone 1-A was draining oil which underlay the Allen tract and that this constituted fifty percent of the oil Boone 1-A produced. Using the current market price of oil at the time, the chancellor awarded appellees an amount as damages to accrue in the future during the *1300 projected life of Boone 1—A. In 5, Williams and Meyers, Oil And Gas Law, section 825.5 (1975) the following statement appears as to this type of award.
However, damages may not be an adequate remedy for future drainage. Although the scientists and engineers may be able to estimate fairly accurately the amount of future drainage (if that be the measure) or the amount of future production from the hypothetical well, there is still uncertainty about future economic conditions that will affect the size of the award. Who knows, or can fairly estimate, what the price of oil and the rate of allowable production will be? True, these “facts” must be determined in order to decide whether a prudent operator would drill. But does it follow that estimates used for the purpose of determining liability should also be used to fix monetary damage? We suggest that this double doubt should be eliminated by restricting relief for future drainage to conditional cancellation of the lease — absent the circumstance discussed above where drainage has so depleted the leasehold that a commercial offset well can no longer be drilled. A proper decree would award monetary compensation for past drainage, where the price and allowable rate of production is known, and would forfeit the lease as to affected acreage if, within a specified time such as 60 or 90 days, the lessee fails to commence a protection well.
Since the above treatise was written it has become increasingly clear that the market value of oil and oil products is directly affected, not only by world economic conditions, but by unpredictable political upheavals and the worldwide conflicts of nations, as well as by embargoes and tariffs, and the extent to which productive fields can be discovered and exploited. Accurately determining how much oil an underground pool or reservoir contains, or predicting with any certainty the productive life of a well or the rate of its decreasing production are not inconsiderable difficulties and great expenditure of money and effort is presently being directed toward the discovery and development of synthetic fuels and energy sources. These and other factors are rationally unpredictable and are not so clearly foreseeable as to be reasonably capable of supporting an award of damages extended for many years into the future. Moreover, this precludes the possibility of a mitigation of damages by either party and assumes that they will be allowed to continue and accrue.
In Millette v. Phillips Petroleum Company, 209 Miss. 687, 48 So.2d 344 (1950) and Phillips Petroleum Company v. Millette, 221 Miss. 1, 72 So.2d 176 (1954) this Court drew on Bush Oil Company v. Beverly-Lincoln Land Company, 69 Cal.App.2d 246, 158 P.2d 754 (1945), in reaching certain conclusions. While the decision in Bush has become somewhat eroded since the above cases were decided by this Court, we have concluded that remedies suggested in Bush may be utilized to fashion a fairer and better remedy in cases of this kind than an attempt to project an award of damages into an unknowable future. Obviously, the latter process, involving, as it must, speculation as to unforeseeable events and conditions affecting the market price of this commodity, the exclusion of possibility of the mitigation of damages, as well as other imponderables, is quite likely to work a substantial injustice, whether to lessors or lessees.
For the above reasons, a majority of the judges concur in holding that the award of anticipatory damages, that is “lump sum” damages expected to accrue in the 20 years following the date of the decree appealed from shall be set aside, and the case remanded for further proceedings in keeping with the opinion written herein by Presiding Justice Patterson in which a majority of the judges concur.
The writer of this opinion differs from the majority, however, as to the best method by which this litigation may be brought to an early final conclusion and which will, at the same time, fairly protect the interests of the respective parties.
*1301 It is the writer’s view that, in lieu of the lump sum anticipatory damages awarded by the chancellor, appellants’ breach of duty should work a forfeiture of the lease if, following receipt of the mandate herein, appellants should fail to commence and complete an effective protective well to offset drainage of the Allen tract by the Boone 1-A, such well to be begun and completed within reasonable times to be fixed by the Court on remand. Meanwhile, in my view, appellees should continue to be entitled to recover damages from appellants on the basis of the royalty specified in the lease, computed on one-half of the Boone 1-A production, until such offset well has been completed to a point where it is substantially offsetting drainage by the Boone 1-A. If appellants should refuse or decline to do this within a reasonable time following receipt of the mandate herein and a forfeiture of the lease occurs for that reason, appellees should be entitled to recover of appellants damages computed at the same rate for an additional period of 90 days following such forfeiture, in order to afford them a reasonable time within which to drill the offset well themselves. This solution (again, in my view) would accomplish the desirable objective of bringing the matter to a close, and would seem to comport with the statement of this Court in Shell Oil Company v. James, 257 So.2d 488, 495 (Miss.1972), where there has been a breach of the covenant to prevent drainage. The Court stated:
If there is “substantial” oil or gas under the land in question the lessee is required to “drill or drop” the lease.
PATTERSON, Presiding Justice, for the Court:
I am of the opinion the appellees are entitled to future damages equal to the royalty they would have received had the appellants drilled a protective replacement well on the “Allen forty” to counter drainage from the Boone well. The lease, of course, provides for royalty payments once production begins which is to continue throughout the well’s productive life. The royalties are subject to the vagaries of market values and quantities produced during the well’s productive life. A lump sum payment under such circumstances, in my opinion, has the potential of injustice to either the lessor or lessee because of changing market values, quantities of production and duration of production. I am of the opinion that damages commensurate with one-eighth royalty upon one-half of the production of the Boone 1-A well less the royalty from the Allen No. 1 well (8150-foot zone) would be more attuned to the lease contract between the parties than would the payment of damages in a single sum.
I am of the further opinion that a conditional cancellation of the Allen lease as it affects the 8150 zone would be inappropriate for the present circumstances. The Boone 1-A well was completed as a producer in December 1969. The situation that existed within a reasonable time thereafter from which it could be determined that a prudent operator would drill an offset well is vastly different from the present circumstances which would be determinative of whether a prudent operator would presently drill. The price of oil, the cost of drilling and producing, as well as depletion of the zone by draining since 1969 are some of the factors to be considered in determining whether a prudent operator could presently drill with reasonable expectation of profit above cost.
I therefore think that the remand should be without prejudice to the appellants to drill or not drill as they think proper. Meanwhile, the payment in damages is to continue as mentioned and in the event a protective well is drilled to the 8150 zone, that damages be continued, mitigated or terminated, dependent upon the subsurface disclosures of that well.
In sum, we hold that damages be paid to the appellees on the basis of royalty upon one-half of the production of the Boone 1-A well as long as the Allen forty (8150 zone) is being drained by it, but without prejudice to the appellants to determine whether they, as prudent operators, should presently drill.
*1302 This case was considered by a conference of the justices en banc.
AFFIRMED ON LIABILITY, AFFIRMED IN PART ON DAMAGES AND REVERSED IN PART AND REMANDED ON DAMAGES.
INZER, P. J., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
GILLESPIE, C. J., did not participate in the decision.