## Kleppner *v.* Lemon.

*Lease—Oil and gas lease—Royalties—Damages.*

Where a lessee in order to evade paying royalties under an oil and gas lease instead of drilling a well and operating the land in accordance with his covenants drills a well on adjoining property which he controls, in such a way as to drain the oil and gas from under the leased land, and to render it impossible to determine how much oil was drawn from the lessor's land, the lessee will be liable to pay royalties to the lessor on all of the oil produced by the well operated on the adjoining land.

The decree entered in Kleppner v. Lemon, 176 Pa. 502, slightly modifying the decree of the court below, did not annul or in any manner abridge the appointment of the master and examiner, whose duties were the same, subsequent to the decision as before the appeal on which it was based.

Argued Oct. 26, 1899. Appeal, No. 84, Oct. T., 1899, by defendant, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1896, No. 188, overruling exceptions to master's report in case of John Kleppner v. D. P. Lemon. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Exceptions to report of John S. Lambie, Esq., master. See previous report of the case in 176 Pa. 502.

The master found the facts to be as follows:

### FINDINGS OF FACT.

1. The defendant had notice of the decree of the Supreme Court as made in the case within a very short time thereafter. The date when given is not clearly proven. There was no reason why the notice should not have been given within ten days after the making of the decree, and if not given within that time, it was the fault of the plaintiff. It is certain, however, that

notice was given within a reasonably short time, and for the purposes of this case, it may be treated as though given within ten days after the decree was made. The defendant never filed the declaration ordered by the Supreme Court, and never drilled a well at the point indicated by the court, or at any other place on the land, except the one which he had drilled in the spring of 1895, mentioned in the second finding of the court. He did nothing further to develop the land, except to pump the small well already mentioned.

2. The plaintiff did not himself do anything towards the further development of the land.

3. Referring to the third finding of the court, the master and examiner further finds that the well on the Stotler farm adjoining plaintiff's property, and within 157 feet of his (plaintiff's line) which was owned by the defendant and was commonly known as Stotler No. 2, continued to produce oil from the time it was completed in April or May, 1895, to May, 1897. No evidence was given as to the amount of its production from the time it was completed to July 1, 1895. From July 1, 1895, to May, 1897, the total production was 22,182.62 barrels. The production and royalty paid to Stotler, who owned the land upon which it was located constantly diminished from 2,358.72 barrels in August, 1895, to 374.16 barrels in April, 1897.

The defendant owned and operated other producing wells on other tracts adjoining the land of the plaintiff, but nothing was offered to show the amount of oil produced by them.

4. No oil was brought to the surface on plaintiff's land, except that produced from the well on the higher portion thereof, being the same mentioned in the second finding of the court.

At the average price the value of one eighth of the oil produced by the well known as Stotler No. 2, owned by defendant from July 1, 1895 to August 31, 1896, being thirty days after defendant could and should have had notice of the decree of the Supreme Court, computed at the average price of oil, is $3,088.33.

5. The plaintiff's land was oil producing land, and the well known as Stotler No. 2, and other wells in the vicinity, owned and operated by defendant, have continuously since April, 1895, to the present time, drawn oil from the plaintiff's land, and thereby greatly diminished the supply of oil on plaintiff's land to the great benefit of defendant, and to the great damage of plaintiff.

6. It was the duty of the defendant to have developed the plaintiff's land as soon as possible, after the making of the lease to him in June, 1894, and especially was it his duty to have sunk a well on plaintiff's land at the point indicated by the Supreme Court immediately after he struck oil at Stotler No. 2 in April, 1895; and that he has wholly failed and neglected to perform his duty in that respect.

7. It has not been possible at any time since April, 1895, when oil was struck at Stotler No. 2, to ascertain the quantity which might have been produced from plaintiff's land if defendant had complied with the obligation resting upon him. The failure of defendant to drill a well on the lower portion of plaintiff's tract, near the creek, and his continued operation of other producing wells on tracts near to and adjoining the tract which he leased from plaintiff, thereby draining oil from plaintiff's land, have rendered it impossible to ascertain the quantity of oil which might have been obtained from plaintiff's land, if he had developed it in good faith and according to the obligation resting upon him.

The master after citing 2 Kent's Commentaries, 364, Moore v. Bowman, 47 N. H. 494, Hart v. Ten Eyck, 2 Johnson Ch. 62, Lupton v. White, 15 Vesey, Jr. 432, Armory v. Delamirie, 1 Strange, 505, Attorney General v. Fullerton, 2 Vesey & Beames, 263, Diversey v. Johnson, 93 Ill. 547, Brackenridge v. Holland, 2 Blackford, 377, White v. Lady Lincoln, 8 Vesey, Jr. 364, Spofford v. True, 33 Maine, 283, Stephenson v. Little, 10 Michigan, 441, and Winlack v. Geist, 107 Pa. 297, concluded as follows:

In the light of the cases quoted the master is of the opinion that there has been such a course of conduct on the part of the defendant, and such an intermixture of the productions of the plaintiff's tract of land with the production of the adjacent tracts of land as to prevent the possibility of ascertaining the production of each and separating them; and that as a result John Kleppner, the plaintiff, is entitled to have and receive from D. P. Lemon, defendant, a royalty equal to one eighth of the production of Stotler No. 2 from July 1, 1895 to August 31, 1896. The production of Stotler No. 2 between the dates mentioned was 18,803.66 barrels and the royalty, one eighth, 2,350.45 barrels, of the value of $3,088.33 with interest from August 31, 1896.

Exceptions to the master's report were dismissed by the court in an opinion by WHITE, P. J., and a decree was entered in accordance with the recommendation of the master.

*Error assigned* was the decree of the court.

*D. F. Patterson*, for appellant, cited Duffield v. Rosenzweig, 144 Pa. 520.

*M. A. Woodward*, with him *W. G. Guiler*, for appellee, cited as to the measure of damages: Moore v. Bowman, 47 N. H. 494; Hart v. Ten Eyck, 2 Johnson Ch. 62; Lupton v. White, 15 Vesey, Jr. 432; Armory v. Delamirie, 1 Strange, 505; Attorney General v. Fullerton, 2 Vesey & Beames, 263; Diversey v. Johnson, 93 Ill. 547; Brackenridge v. Holland, 2 Blackford, 377; White v. Lady Lincoln, 8 Vesey, Jr. 364; Spofford v. True, 33 Maine, 283; Stephenson v. Little, 10 Michigan, 441; Winlack v. Geist, 107 Pa. 297.

OPINION BY MR. CHIEF JUSTICE MCCOLLUM, Oct. 31, 1900:

On June 15, 1894, the plaintiff leased to the defendant for a term of two years for oil and gas purposes, a triangular piece of ground containing between seven and eight acres in Penn township, Allegheny county. The plaintiff was to receive one eighth of the oil obtained from his land during the term of the lease. The defendant in February, 1895, commenced a well on the land of the plaintiff within fifteen or twenty feet of the southern line of his property. The well was completed in the spring of 1895, and produced about five gallons of oil per day. In March, 1895, the defendant commenced to drill a well on Stotler's farm about 157 feet from the line of plaintiff's property, which well was completed in May, 1895, and produced about 120 barrels of oil a day. From that time on the defendant made no effort to comply with the terms of his lease with the plaintiff, but directed his attention and best energies to the operation of the wells in close proximity to the plaintiff's property. He refused to surrender the lease he had obtained from the plaintiff and persisted in his scheme for draining the oil from the land of his lessor. In the execution of this scheme he was successful, and when the drainage of the oil was accom-

plished he abandoned the lease, and appeared to consider that his obligations to the lessor were canceled.

It is now contended by the defendant that the decision of this court in Kleppner v. Lemon, 176 Pa. 502, operated as a discharge of his liability when he surrendered the lease as above stated. This contention, however, is not supported by the decision referred to. The modifications of the decree appealed from in that case were slight and did not annul or in any manner abridge the appointment of the master and examiner whose duties were the same subsequent to the decision aforesaid as before the appeal on which it was based. It is plain enough that nothing appears in the decision of the court in Kleppner v. Lemon, 176 Pa. 502, which in any degree qualifies or condemns the appointment of the master and examiner in the case at bar. It remains to inquire whether there was error in the conclusion arrived at by the master and approved by the court below. A careful examination and consideration of the findings of fact and conclusions of law embraced in the report has failed to convince us of error in either. We therefore dismiss the specifications of error.

Decree affirmed and appeal dismissed at the cost of the appellant.