KEENAN et al. v. TEXAS PRODUCTION
CO. et al.

No. 1311.

Circuit Court of Appeals, Tenth Circuit.

July 14, 1936.

F. Chatterton, of Cheyenne, Wyo. (Geo. E. Brimmer, of Cheyenne, Wyo., and R. E. McNally, of Sheridan, Wyo., on the brief), for appellants.

Yates A. Land, of Denver, Colo. (Albert D. Walton, of Cheyenne, Wyo., on the brief), for appellees.

Before LEWIS and BRATTON, Circuit Judges, and VAUGHT, District Judge.

BRATTON, Circuit Judge.

This appeal presents for review the action of the court below in refusing to require the defendants to answer certain interrogatories which were propounded under Equity Rule 58 (28 U.S.C.A. following section 723).

Plaintiffs instituted an action at law against the defendants to recover damages in the sum of $996,724.17 for the failure, neglect, and refusal to develop certain land in Wyoming leased for oil and gas purposes. In November, 1917, the Secretary of the Interior leased the land to Milton S. Durrill. It consisted of 160 acres situated in the Wind River Indian Reservation and constituted a part of the Maverick Springs oil field. The lease was for a period of 20 years with preferential right in the lessee to renew it for successive periods of 10 years each upon such reasonable terms and conditions as the Secretary should prescribe. The lessee agreed and was obligated to exercise reasonable diligence in sinking wells and to conduct development in a workmanlike manner, to pay a royalty of 12½ per cent. of the gross production of crude oil and natural gas and, in addition, an annual cash rental of $1 per acre in advance; and to refrain from assigning or subleasing any part of the land without the written consent of the Secretary. In December of that year Durrill transferred the lease and leases on other lands to Keenan subject to the approval of the Secretary. Keenan assumed all of the duties, obligations, and liabilities of Durrill under the original lease, bound himself to pay the specified royalty to the United States, and, in addition, to pay Durrill 25 per cent. of the gross production. In August, 1925, Keenan conveyed an undivided half interest in the leasehold to Texas Production Company, subject to the approval of the Secretary. Coincident with the transfer and as a part of the transaction, Keenan and Sheridan-Wyoming Oil Company on one part and Texas Production Company on the other entered into a contract in which the latter agreed to pay the Sheridan Company $75,000 in cash and one-half of the net proceeds arising from development and operation until a further sum of $75,000 was paid; and the assignee was given an option to acquire the other half interest for $100,000 in cash. It was further provided that if there was a failure to exercise the option—and it was not exercised— the assignee should continue to develop and operate the premises for the joint account of itself and the Sheridan Company, each to receive one-half of the net proceeds. The assignee was given the right either to sell the oil and gas produced at the highest field market price prevailing at the time of production for oil produced in

the Maverick Springs structure or to appropriate such product to its own use, in which event it should account therefor at the price just mentioned. In January, 1932, Texas Production Company sold and conveyed all of its rights and interests in the leasehold to the Texas Company, subject to the approval of the Secretary. The rights of Durrill in the lease, subject to those conveyed to Keenan, have passed by successive assignments to Continental Oil Company of Delaware. The Secretary approved all of the several described transfers and their validity is not challenged.

Plaintiffs alleged in the action at law that Texas Production Company was and is a wholly owned and controlled subsidiary of the Texas Company; that plaintiffs drilled 4 wells on the land or caused them to be drilled before the undivided half interest in the leasehold was transferred to Texas Production Company; that thereafter and before August 25, 1927, Texas Production Company drilled 4 additional producing wells; that on August 25, 1927, there was an available and proven potential production of approximately 3,000 barrels of oil per day from the leasehold estate; that as a result of drilling operations by others, there was available for production and marketing in the Maverick Springs field approximately 5,000 barrels per day; and that despite such available production, the defendants desisted, neglected, and refused ever since that date to develop the premises or to produce any oil therefrom. Damages were prayed in the sum previously stated.

Defendants denied that Texas Production Company was a wholly owned and controlled subsidiary of the Texas Company; admitted that no wells were drilled upon the land after August 25, 1927; and denied that they had failed, neglected, or refused to fulfill any of the obligations, conditions, and stipulations contained in the original lease, the transfer, or the agreement, except the obligation to pay the annual rental in cash. They affirmatively alleged that they had fulfilled each and every covenant, stipulation, and condition contained in the agreement between plaintiffs and Texas Production Company. A reply was seasonably filed and the issues joined in September, 1934.

This bill of discovery in aid of the action at law was filed with leave of court in March, 1935. Eighty-five interrogatories were attached and exhibited. Object-

tions were interposed to them. After a hearing, defendants were required to answer some of them in full and some in part; and objections were sustained to the others. With further leave, plaintiffs then exhibited 60 additional interrogatories. Objections were interposed and heard. Defendants were required to answer some in full and some in part; and objections were sustained to the remaining ones. Defendants made full answers as directed. Plaintiffs appealed from the parts of the decrees sustaining the objections and refusing to require defendants to answer the interrogatories in question.

█ The decrees under review made final disposition of the proceeding in equity and are appealable. Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496; Baush Machine Tool Co. v. Aluminum Co. (C.C.A.) 63 F.(2d) 778, certiorari denied 289 U.S. 739, 53 S.Ct. 658, 77 L.Ed. 1486.

It is inadvisable to discuss the large number of interrogatories involved seriatim. To do so would extend this opinion far beyond pardonable length. Some of them relate to the various component parts of oil produced in the Maverick Springs field and of similar oils produced in other fields in Wyoming and in other states. These include quantities and component elements of oils processed at the refineries of the Texas Company situated at Casper and at Cody. Some relate to the potential production in the Maverick Springs field. These include the extent in increase of production usually effected through acid treatment of wells and the plan or plans of development which the defendants have prepared since August, 1925. Some relate to the efforts and methods of the defendants to create a market or demand for the oil. These include an inquiry as to whether any action has been taken to furnish oil to the Chicago & Northwestern Railway Company for the operation of its locomotives. Some relate to the equipment in the refineries owned by the Texas Company at Casper and at Cody. Some relate to refineries owned by that company in other states; and some to pipe lines owned by either company in other states which extend outside the field of production.

█ The remedy of discovery through interrogatories propounded in accordance with the rule is to facilitate the proper disposition of the cause in an orderly manner. It is not merely to vex or harass litigants. Neither can it be utilized for a mere fishing expedition, nor for impertinent intrusion. The inquiry must be confined to material matters of fact and not extended to a disclosure of evidence or of facts which merely tend to prove ultimate material facts, or to elicit the names of witnesses. Sinclair Refining Co. v. Jenkins Co., supra; Keaton v. Kennamer (C.C.A.) 42 F.(2d) 814; Kinney v. Rice (D.C.) 238 F. 444; Pressed Steel Car Co. v. Union Pac. R. Co. (D.C.) 241 F. 964; Taylor v. Ford Motor Co. (D.C.) 2 F.(2d) 473; Goodrich Zinc Corporation v. Carlin (D.C.) 4 F.(2d) 568.

█ Interrogatories cannot go with warrant of law beyond the scope of the issues in the law action. Kelley v. Boettcher (C.C.A.) 85 F. 55; Fuller v. Knapp (C.C.) 24 F. 100. The burden rests upon plaintiffs to show that the answers will be relevant to the issues joined in the action at law and that fact should be apparent from an inspection of the pleadings in the case. Warner v. Lehigh Valley R. Co. (C.C.A.) 75 F.(2d) 483.

█ We think it is plain that these interrogatories do not come within the enumerated requirements. There is an obligation on the part of a lessee to exercise due diligence in the development of lands leased for oil and gas purposes, having due regard for the best interests of both lessor and lessee. But in the absence of a specific provision that obligation does not require him to conduct operations beyond the point where they will be profitable to him, even though the lessor will enjoy a profit. Brewster v. Lanyon Zinc Co. (C.C.A.) 140 F. 801; Kretni Development Co. v. Consolidated Oil Corporation (C.C.A.) 74 F.(2d) 497. There never have been pipe line facilities from the Maverick Springs field to a railroad shipping point or to any commercial market. For that reason, all of the oil produced in that field has been bottled up without any market value. None of the written instruments contains a provision expressly requiring the construction of a pipe line for outlet purposes. The pleadings in the action at law indicate that the issues are whether as part of the development of the leased premises in accordance with established practices defendants could with profit to themselves have provided pipe line facilities from the field to a market or place of utility or could have

constructed and operated a refinery in the field; and, if so, the damage which plaintiffs have suffered in consequence of their default in that respect. Ordinarily, the measure of damages for breach of an obligation to develop is the market value of the obtainable product less the cost of production. The potential production can be established by recognized methods; and crude oil being a product of wide use, the value of the royalty is susceptible of proof without microscopic reference to its component parts. The interrogatories are not appropriately confined to those issues. Instead, they go far afield and many of them constitute mere unwarranted inquisition. The court was right in refusing to require their answer.

The decrees are affirmed.