### COOPER et al. v. OHIO OIL CO.
### No. 1888.

Circuit Court of Appeals, Tenth Circuit.

Oct. 27, 1939.

John D. Clark, of Cheyenne, Wyo., for appellants.

Harold H. Healy, of Casper, Wyo., and C. R. Ellery, of Cheyenne, Wyo. (A. M. Gee, of Findlay, Ohio, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Predecessors in interest of appellants executed an oil and gas lease with appellee, whereby they granted to appellee the right to explore for oil and gas certain real estate described in the contract, all located in Township 20 North, Range 78 West of the 6th P. M. in Carbon County, Wyoming. The contract, in substance, provided that appellee should employ all usual and lawful means to develop the premises for the discovery of oil and gas, and in the event of discovery, to produce the same with all usual and reasonable diligence during the continuance of the lease; that appellee should prosecute the work of discovery with diligence suitable to the undertaking and adequate to realize the full benefits of the natural resources of the land, using due care to see that oil and gas should be produced from the wells within the limits of the land and not drained away through wells on neighboring land; that appellee should keep full and accurate logs of all drillings, full and complete accounts and records of all discoveries, production and disposition of oil and gas; that free access should be given to appellants or their representatives to the premises and to the logs, accounts and records; that appellee would, as soon as practicable after the close of each month, furnish appellants full, accurate reports as might be required, touching all matters in any way connected with the agreement, and that special reports should be made whenever requested.

The first well drilled was a producer. Thereafter appellee continued a development program of the premises. Appellee was also the owner of leases on other lands adjoining the premises in controversy. It was the sole owner, developer and operator of the entire oil field which was known as the Rock River Field. It drilled all the wells in the field.

Appellants filed their bill in equity in the District Court of the United States for the District of Wyoming, alleging that appellee had failed to exercise due care in the development of the property; that it failed to protect the property against drainage of oil through adjoining wells; that it had

fraudulently and for its own benefit and to the detriment of appellants permitted more that four million barrels of oil to be drained from the property of appellants through adjoining wells on other property; that the program put in effect by appellee was unusual and contrary to the methods and development programs of prudent and experienced operators at that time; that appellants had no knowledge of the fraud and deception until less than three years before the commencement of the action. Appellants sought to recover damages from appellee as a constructive trustee for appellants' share of the oil claimed to have been drained and taken by appellee through wells upon adjoining lands. Appellants also prayed for an accounting.

Appellee filed its answer challenging the equity jurisdiction of the court, denied that oil had been drained from appellants' property, and alleged appellants' property was developed in a prudent manner. The answer also pleaded laches, acquiescence, and the statute of limitations.

After a lengthy trial, the trial court filed a memorandum opinion in which it held that appellants had a plain speedy and adequate remedy at law and that the court was without jurisdiction to grant equitable relief. In the memorandum opinion the court further found that if any equitable cause of action existed, it was barred by laches. The court found that no drainage had taken place and that appellee had developed the property in a prudent and proper manner. Judgment was entered for appellee and a decree was issued dismissing the bill. From this decree an appeal has been taken to this court.

The discovery well was drilled on appellants' property about May, 1918. Following this, wells were drilled around the presumed exterior line of the structure to determine its area. The crest of the structure was located on appellants' land. Other wells were drilled from time to time, both upon appellants' land and upon the adjoining tracts. In every instance but one, offset or line wells were drilled on appellants' land before they were drilled on adjoining tracts.

The drilling program followed the ordinary course of development until about the year 1922, when what is known as Well No. 10 was drilled on the Southwest Quarter of Section 35 on appellants' land. This well came in as a large gas well; producing approximately 15,000,000 feet of gas and about 100 barrels of oil. The opening of this well immediately affected the flow of surrounding wells. In a number of instances adjoining wells stopped producing entirely, and in others production was greatly decreased. Well No. 10 was shut in, and thereafter no other wells were drilled on the crestal area in the Southwest Quarter of Section 35. Other wells were drilled on other parts of appellants' property. Shutting in of Well No. 10 caused a resumption of oil production in wells affected when it was drilled in.

Up to the time Well No. 10 was brought in, the drilling of wells on appellants' land proceeded at the same rate as on adjoining tracts. After the bringing in of Well No. 10 a greater number of wells were drilled on the lower portions of the structure located on adjoining tracts than were drilled on appellants' land, the difference being accounted for by the fact that no further wells were drilled on the crestal area in the Southwest Quarter of Section 35.

Appellants admit that appellee drilled all line wells or offset wells, but contend that drilling with greater density on adjoining lands lower on the flanks of the structure caused a secondary gas cap to form in the Southwest Quarter of Section 35 on the crest of the structure, and that the downward pressure exerted by this secondary gas cap, operating in conjunction with the force of gravity, caused a large quantity of oil under appellants' crestal lands to drain out and down the flanks of the structure into the adjoining lands.

Appellants also alleged that appellee acted fraudulently and concealed from appellants its fraudulent acts in the development of the property. There is a complete lack of proof that appellee withheld any information pertaining to the development or operation of appellants' property. Not only did appellee furnish all reports required by the contract, but it also furnished additional reports at various times. The contract required appellee to furnish reports showing the drilling, operation and production from all wells on appellants' land. In addition to this, appellee from time to time furnished reports showing each producing well in the whole field and its production. It also furnished reports showing all wells being drilled or spotted for future drilling in the field. These reports were furnished to appellants' attorney, in duplicate.

Appellants were subjects and residents of England. They were represented by attorneys in England and in Laramie, Wyoming. All reports furnished were furnished in duplicate to counsel in Wyoming, one copy of which was retained by him and the other forwarded to the attorney in England. Richard Francis Cooper, one of the appellants, testified that weekly and monthly reports were received; that for a number of years beginning with 1919, he made a practice of visiting Wyoming and the oil field at least twice a year. In 1919, appellants employed petroleum geologists to make a report on the field and its development. The first report was submitted in May, 1920. Two additional reports were submitted by these geologists, the last one in December, 1921. At no time did appellee withhold any information concerning the drilling, development or production from any well within the field.

The evidence established the fact that the crest of the oil structure was located on appellants' land and that the oil on the crest of the structure was highly impregnated with gas; that the oil on the Southwest Quarter of Section 35 was heavily impregnated with gas, and that therefore it was unnecessary to drill as intensively there as on the edge of the structure where the sand was less permeable and where there was less gas, in order to recover the oil.

It is elementary that a duty rests upon the operator of an oil property to protect it against drainage through adjoining wells and to develop the property in a prudent and proper manner. This duty is imposed upon an operator even in the absence of any expression to that effect in a contract. The law places this duty upon the operator. It is a duty that must be exercised with reasonable care and diligence. In practically all cases, courts have said that it is the lessee's duty to prevent substantial drainage through the exercise of reasonable care and diligence. Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Allegheny Oil Co. v. Snyder, 6 Cir., 106 F. 764; Humphreys Oil Co. v. Tatum, 5 Cir., 26 F.2d 882; Orr v. Comar Oil Co., 10 Cir., 46 F.2d 59; Shell Pet. Corp. v. Shore, 10 Cir., 72 F.2d 193; Hartman Ranch Co. v. Assoc. Oil Co., 10 Cal.2d 232, 73 P.2d 1163; Howerton v. Kansas Natural Gas Co., 81 Kan. 553, 106 P. 47, 34 L.R.A.,N.S., 34; Pelham Pet. Co. v. North, 78 Okl. 39, 188 P. 1069.

The controversy here centers around the development of that portion of appellants' property included in the top of the crestal area on the Southwest Quarter of Section 35. As has been said, Well No. 10 came in as a big gasser and immediately production in adjoining wells declined and in some wells ceased entirely. The well was closed in and production was resumed in the adjoining wells. Appellee concluded that the area surrounding Well No. 10 was a gas area and that its development would not only result in no additional oil production, but would be a serious detriment to the adjoining wells. Appellants' expert, English, agreed with the closing in of Well No. 10. In a letter to appellants' attorney, Corthell, he stated that he would be inclined to protest strongly if the well were allowed to produce.

Appellants, on the other hand, contend that the failure of appellee to drill and develop this portion of appellants' property caused the development of a secondary gas cap upon the apex of the structure, causing a downward pressure, forcing the oil to the lower levels of the adjoining property; also that by removing oil from the lower levels at a faster rate than from the peak of the crestal area a certain amount of gravity drainage ensued which caused the disappearance of oil from appellants' land to the lower adjacent areas.

Appellee's theory is that there was an original gas cap in the crestal area and that no secondary gas cap formed; that there was no pressure down structure because the high point of pressure was at all times down structure and the low point of pressure was on the crestal lands and that the pressure from below had a tendency to force the oil upward and prevent drainage from the high point to the lower point. Appellee also contended that there was an effective water drive present, and that this tended to maintain the point of high pressure down structure and would prevent the escape of oil from the higher to the lower portion of the structure. Both parties produced expert testimony tending to sustain their respective views. By far the greater number of experts testified to the theory advanced by appellee. No useful purpose would be served by reviewing in detail the testimony of all these witnesses.

The Continental Oil Company had a thirty per cent working interest in the oil leases on appellants' property and a twenty per cent working interest in oil leases on adjoining tracts. The same reports that were furnished to appellants were also furnished to the Continental Oil Company. No

objection was made by the Continental Oil Company to the manner in which appellee was developing this property.

 The great preponderance of the testimony shows that the gas cap was an original and not a secondary one; that there was a heavy water drive which would overcome any tendency of oil to travel down structure; and that the offset wells drilled on appellants' land fully protected it from drainage.

It is our conclusion that the opinions of the experts for appellee are buttressed by indisputable facts and that the evidence amply sustains the conclusions and the judgment of the court.

The judgment of the trial court is affirmed.