[Civ. No. 14592. Second Dist., Div. Three. May 18, 1945.]

R. R. BUSH OIL COMPANY (a Corporation), Appellant, v. BEVERLY-LINCOLN LAND COMPANY (a Corporation), Respondent.

Cree & Brooks and William H. Cree for Appellant.

Burke, Hickson, Burke & Marshall for Respondent.

FOX, J. pro tem.—Respondent owned lots 169 and 170 in Montebello, a city in Los Angeles County, subject to an oil and gas lease held by appellant giving it the sole and exclusive right to drill for and produce oil and gas from said premises. These lots contain approximately 10 acres, and form a rectangle measuring 330 feet from east to west and 1,260 feet from north to south. Lot 170 is immediately north of lot 169. Appellant drilled two wells on this property—one well on each lot. These wells are known as Mihlfred No. 1 which is located on lot 169 and Mihlfred No. 2 which is located on lot 170. This latter well is approximately in the center of the lot. Mihlfred No. 1 is some 200 feet south of the northerly line of lot 169 and 115 feet east of the westerly property line of said lot. Appellant commenced to drill the first of these wells on September 27, 1939, and placed it on production November 16, 1939. The drilling of the second well was started on January 31, 1940, and it was placed on production April 10, 1940. These wells were drilled to a depth of 7,700 feet. Both wells have produced oil and gas in commercially paying quantities ever since they were placed on production. These were the only wells drilled on respondent's property.

Lots 171 and 172 lie immediately to the east of and adjoining lots 169 and 170, respondent's property, the westerly line of lots 171 and 172 being identical with the easterly line of

respondent's property. Lot 172 is immediately north of and adjoining lot 171. Lot 169, which belongs to respondent, and lot 171 have a common easterly-westerly boundary line. Lots 171 and 172 have the same dimensions as those belonging to respondent and are also rectangular. Respondent, however, has no interest in lots 171 and 172.

During all times herein mentioned appellant has been also the lessee under separate oil and gas leases of lot 171 and the west half of lot 172. Between May 21, 1939, and January 25, 1940, appellant drilled and placed on production three wells on these last mentioned lots. (Two other wells were also drilled by another operator on the east half of lot 172.) Zanetti well No. 2, drilled by appellant on the west half of lot 172, and Alauzet well No. 1, drilled by appellant on lot 171, are offset, according to the court's finding, by the two wells appellant drilled on respondent's property. Zanetti No. 1 was commenced by appellant on September 13, 1939, and placed on production November 15, 1939. It is located on lot 171, 82½ feet east of the easterly line of lot 169 at the surface of the ground and 68 feet east of said boundary line at the bottom, the well being drilled on a slant toward respondent's lot 169. This well was never offset by any well on respondent's land. The closest well on respondent's property (Mihlfred No. 1 on lot 169) is 436 feet from appellant's Zanetti No. 1 on lot 171.

The court found that appellant so located and spaced the said wells so drilled by it on said lots 169 and 171 as to cause oil and gas to be drained through said well known as Zanetti No. 1 not only from lot 171 on which said well is located but also from a large portion of the said premises owned by respondent. The court also found that ever since said well known as Zanetti No. 1 was placed on production, appellant has been continuously and still is producing through said well large quantities of oil and gas drained beneath the surface of said lot 169, which oil and gas so drained from beneath said lot 169 is irretrievably lost to respondent, and that appellant has gained and is gaining the benefit thereof. The court also found that appellant failed to protect respondent's said premises against said drainage of oil and gas by and through the well known as Zanetti No. 1. The court further found that if the oil and gas which appellant produced through its Zanetti well No. 1 from respondent's lot 169 up to December 31, 1941, had been produced from a well located on respondent's said

lot the respondent would have been entitled to $3,020.49 in royalties under the terms of the lease which provided for a landowner's royalty of 13½ per cent. In arriving at this figure the court found that one-fourth of the oil and one-fourth of the gas produced by appellant through its Zanetti well No. 1 was drained from respondent's said lot and that this proportion of the production of Zanetti well No. 1 would continue to be drained from respondent's property until a sufficient protection well is drilled thereon.

The court gave respondent judgment for: (1) $3,020.49 damages up to December 31, 1941, and (2) a sum equal to a royalty of 13½ per cent of the proceeds of one-fourth of all the oil and gas produced and sold after December 31, 1941, from said well known as Zanetti No. 1 until the appellant drills a sufficient protection well on respondent's lot 169 or quitclaims to respondent the southerly 207 feet of the east half of said lot. The appeal is taken from this judgment which, in our opinion, should be affirmed.

█ Appellant is in the position of being the lessee of two adjacent oil producing tracts which are separately owned. It so placed the wells on said tracts, according to the findings of the trial court, that one-fourth of the production from Zanetti well No. 1 is drained from respondent's land. The respondent is thus deprived of royalty on a substantial quantity of oil from its land through the act of its lessee. It certainly should not be held to have been within the contemplation of the parties that appellant who is in possession of respondent's property under the written lease and who has assumed the obligations of that lease should drain oil from beneath respondent's property by means of Zanetti well No. 1 on lot 171. The express covenants in the lease cannot be construed as an authorization for so doing. This proposition finds support in *Hartman Ranch Co.* v. *Associated Oil Co.* (1937), 10 Cal.2d 232, at pages 241 and 242 [73 P.2d 1163]. Respondent must then be entitled to damages for this wrongful invasion of its property rights. Such was the relief granted in a very substantial amount in the Hartman case where the relationship of the parties was identical with that of the parties in this case.

In *Geary* v. *Adams Oil & Gas Co.* (1940), 31 F.Supp. 830, the situation is also identical with that in the instant case. Plaintiff sought damages for his share of the royalty on oil drained from beneath his land by the defendant who held a

lease on plaintiff's property and also on the adjacent premises. It appeared that oil and gas were being drained from the plaintiff's land through the wells of the defendant located on the adjacent leases. Defendant urged as a defense that it would not have been a prudent operation for it to have drilled a protection well on plaintiff's property. The court held that where the lessee was draining oil and gas from his lessor's premises through the operation of wells on adjacent premises such lessee must either drill such wells as might be necessary to protect plaintiff against drainage by wells on defendant's other leases, or, in the alternative, to make provision for making good plaintiff's losses by payment of money. In this connection the court said (p. 834) : ''While Mr. Buchanan, defendant's vice-president in charge of expansion, was of the opinion that to put a well in the southeast part of the Geary lease, in view of the present location of the well, would not have been a prudent operation, he thought it might eventually pay out but that it was very questionable as to whether it would be a profitable venture. Looked at solely from the defendant's point of view, the location of a well in the southeastern part of the lease perhaps would not have been a prudent operation in view of defendant's belief that, though it might pay out, the chances of making a profit were very-questionable. If the defendant had no interest in the adjoining leases on the north and south, it would seem that its defense, based on the foregoing facts, might be sound. *But here the mind is haunted by the fact that the defendant is the beneficiary of the oil drained from plaintiffs' land by the wells on the north and south which belong to the defendant. It has not only been saved the cost of drilling, equipping and operating a protecting well but it gets the oil anyway without plaintiffs being paid for it.''* (Italics added.) The position taken by this federal court strikes us as being honest and fair to all parties and pointedly applicable to our case.

In *Kleppner* v. *Lemon* (1900), 197 Pa. 430 [47 A. 353], the defendant was the lessee of plaintiff's land and of the adjoining tract of Stotler. In May, 1895, defendant brought in a well on the Stotler tract, 157 feet from the line of plaintiff's land. When defendant began to sink that well, plaintiff requested defendant to place it further from his line since it might drain the oil from his land; and, after it had come in a good well, plaintiff requested defendant to sink a well on his land adjoining the Stotler property. Defendant refused to

comply with either request. In August, 1895, the Stotler well produced 2,358 barrels of oil, but dropped to only 379 barrels in August, 1896, when the oil was substantially exhausted. The well did drain oil from plaintiff's land. He was therefore allowed damages equivalent to the royalty on the oil that was drained from his land. (See opinion modifying judgment in *Kleppner* v. *Lemon* (1901), 198 Pa. 581 [48 A. 483].) The opinion of the trial judge is incorporated in the court's opinion (47 A. 353). It is there pointed out that "If he [defendant] designedly placed the Stotler well so near plaintiff's land as to drain it, and thus save the expense of sinking a well on plaintiff's land, it was bad faith, and a manifest, intentional injury to plaintiff. It was taking his oil without paying the royalty." In a later Pennsylvania case (*Barnard* v. *Monongahela Natural Gas Co.* (1907), 216 Pa. 362 [65 A. 801, 803]) the court said a lessee "cannot take advantage of the fact that he has leases on adjoining farms so as to fraudulently deprive either of his lessors of his royalty or annual gas rental."

This problem was considered in *Hughes* v. *Busseyville Oil & Gas Co.* (1918), 180 Ky. 545 [203 S.W. 515]. Defendant had leases on adjacent lands. It had drilled on plaintiff's land within the specified time all the wells required under the lease. The court held there was no obligation to drill other wells insofar as development of the property was concerned but that the express covenant in the lease did not relate to drainage; that "it would be a manifest injustice" to the lessor if the lessee "were permitted to stand upon the terms of its contract" and "at the same time destroy the life and substance of it by permanently taking" through operations on adjoining land the income which the lessor had the right to enjoy. This case is summarized by our Supreme Court and cited with approval on this point in *Hartman Ranch Co.* v. *Associated Oil Co., supra* (p. 240). See, also, *Carper* v. *United Fuel Gas Co.* (1916), 78 W.Va. 433, 439 [89 S.E.12, L.R.A. 1917A 171], and *Indian Ter. I. Oil Co.* v. *Haynes Drilling Co.* (1937), 180 Okla. 419 [69 P.2d 624, 636].

From these authorities we conclude there is an implied obligation on the part of an oil and gas lessee to refrain from taking any affirmative course of action which will result in draining a substantial quantity of the oil and gas from the lessor's property and producing the same through the lessee's

well on adjacent premises belonging to a different lessor. For a breach of this obligation the lessee is liable and is accountable for the royalty on the portion of the oil and gas which he drains from beneath the leased premises.

Appellant earnestly contends that it is not liable for the drainage of respondent's land through its Zanetti No. 1 well, because the evidence does not establish that an ordinarily prudent operator would have drilled an offset well on respondent's property. Appellant's proposition is generally applicable where the drainage well is drilled by a third person, for obviously a lessee should not be required, in the absence of an express provision in the lease, to drill an offset well to protect his lessor's land from drainage caused by one over whom he has no control unless an ordinarily prudent operator would drill such a well. That, however, is not the problem we have here. The drainage well in this case was drilled by the appellant. By appellant's affirmative course of conduct respondent is losing its oil and gas and the royalty thereon. It is not a question of whether a prudent operator should drill an offset well to protect his lessor against drainage caused by the acts of some third person but rather whether the lessee itself may drain the oil and gas from its lessor's land through a well on adjacent property without paying royalty to the owner of the drained land. The distinction is clearly pointed out in a note in 19 A.L.R. 437, at page 443. It is there said: "The foregoing rule requiring the lessor to show in effect that as an ordinary business proposition common prudence requires the lessee to drill offset wells has been applied in cases where the wells upon adjoining premises are operated by a stranger to the lease. *If such wells are operated by the lessee, it would seem clear that, at least, he would be required to account to the lessor for the latter's share of the oil secured through the adjoining wells.*" (Italics added.) So, in this case the appellant should be required to account to the lessor for the latter's share of the oil and gas secured through Zanetti well No. 1 on the adjoining premises. The trial court's decision is in accordance with this proposition.

The obligation on appellant to drill a well on respondent's property offsetting Zanetti well No. 1 arises not by reason of any express provision of the lease between the parties, but by reason of appellant's breach of its implied obligation not to drain the oil and gas from respondent's property through a well located on adjacent premises. The drilling of such a well is simply one of the means which appellant might have

adopted to prevent a breach of its obligation not to drain respondent's land. Whether such a well would have been considered an ordinarily prudent operation need not be determined, since the drainage which it would have prevented was caused by appellant's own affirmative acts.

■ Appellant says that the parties by express provisions in their lease excluded a covenant to drill an offset well. It cites the provisions of paragraphs 8 and 12 of the lease in support of its contention. There might be some point to appellant's proposition if the drainage well, Zanetti No. 1, had been drilled by some third party. As pointed out by our Supreme Court in the Hartman case, *supra,* it certainly should not be held to have been within the contemplation of the parties that the lessee should by its own affirmative operations on adjoining land drain oil from beneath respondent's property. Consequently, the provisions of the lease with respect to drilling offset wells cannot be invoked to justify the appellant in doing that which the parties never contemplated and which injures the respondent. The provisions of the lease, to which appellant points, clearly have no application to the situation before us.

■ Appellant also argues that the trial court erred in fixing November 15, 1939, as the date from which the appellant is answerable in damages. This is the date on which the drainage well was placed on production. Appellant contends that if it was obligated to drill an offset well then, under the terms of the lease, it had either three or six months in which to drill it after completing Mihlfred No. 2 on respondent's property on April 10, 1940. Here again there might be some point in appellant's argument if an offset well on respondent's property had been made necessary by reason of a well having been drilled on the adjacent property by some third person. Such, however, is not the situation, as we have pointed out. Hence the provisions of the lease to which appellant points have no application.

The evidence is sufficient to support the essential findings necessary to sustain the judgment.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied June 15, 1945, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1945. Edmonds, J., voted for a hearing.