**Peter OLSEN, Jr., and Annie C. Olsen,**
**Plaintiffs,**

**v.**

**SINCLAIR OIL & GAS COMPANY, a**
**corporation, Defendant.**

**Civ. No. 4563.**

United States District Court
D. Wyoming.
Jan. 15, 1963.

J. Reuel Armstrong, Rawlins, Wyo., for plaintiffs.

Scott A. Pfohl, Denver, Colo., and A. G. McClintock, Cheyenne, Wyo., for defendant.

PICKETT, District Judge.

The Olsens brought this action against Sinclair Oil & Gas Company to recover damages which they allege to be due because of the drainage of natural gas from their land through a well drilled by Sinclair on adjoining land, and because of the failure of Sinclair to protect their land from drainage. The material facts are either stipulated or not disputed.

The Olsens are the owners of 160 acres of land in Carbon County, Wyoming, and, on April 9, 1959, they executed and delivered to J. A. Padon, Jr., an oil and gas lease covering the property which was assigned to Sinclair Oil & Gas Company shortly after its execution. Sinclair subsequently became the owner of a license to explore, drill for and produce oil and gas upon adjoining land owned by the Union Pacific Railroad Company. The Olsen lease was for a primary term of five years, and provided for an annual payment of $320 for delay rentals if drilling was not commenced on the land before one year from the date of the lease or the date of renewal. The gas royalty payable to the Olsens was ⅛th of the gas produced from the land and sold. The lease also provided that the lessee could, at any time, without the Olsens' consent, surrender the lease and be released from obligations thereunder. On January 28, 1960, Sinclair completed a gas well on the adjoining land which was within 330 feet of the west boundary of the Olsen property. On March 11, 1960, Sinclair made a delay rental payment, pursuant to the provisions of the lease, which was accepted by the Olsens. Production from the well was commenced on June 13, 1960.

In the following months the boundaries of the structure were clearly defined, and the amount of gas therein determined. Sinclair concluded that it would not be profitable to drill a well on the Olsens' land, and, on December 19, 1960, surrendered the lease. After the completion of the well on the adjoining premises, the Olsens made repeated demands upon Sinclair to drill their land to prevent drainage. The evidence establishes that it would not have been prudent at any time to drill the Olsen land, and that all of the recoverable gas within the structure could be taken from the one well. It is stipulated that 38% of the gas within the structure was beneath the Olsens' land.

Two issues are presented: (1) does Sinclair have an obligation to compensate the Olsens for the gas drained from under their land; and (2) did the Olsens waive any right to compensation by the acceptance of the delay rental payment.

The courts have uniformly held that there is an implied duty on the part of the holder of an oil and gas lease to protect the leased land from substantial drainage of oil or gas, and to drill offset wells for this purpose. Cooper v. Ohio Oil Co., 10 Cir., 108 F.2d 535; 2 Summers, Oil and Gas § 399 (Perm.Ed., 1959). This obligation is limited by what is known as the "prudent operator" rule, which is to the effect that the lessee has no implied duty to drill an offset well if reasonably prudent operators would not drill it. Under the usual statement of the standard for prudent operation there is no obligation upon the lessee to drill offset wells unless there is a sufficient quantity of oil or gas to pay a reasonable profit to the lessee over and above the cost of drilling and operating the well. Gerson v. Anderson-Prichard Prod. Corp., 10 Cir., 149 F.2d 444; Keenan v. Texas Prod. Co., 10 Cir., 84 F.2d 826.[1]

1. In Keenan v. Texas Prod. Co., 10 Cir., 84 F.2d 826, 828, the rule is stated as follows:

"There is an obligation on the part of a lessee to exercise due diligence in the development of lands leased for oil and gas purposes, having due regard for the best interests of both lessor and lessee. But in the absence of a specific provision that obligation does not require him to

The Olsens concede that the "prudent operator" rule is generally recognized in all of the oil and gas producing states. They urge, however, that under the facts of this case it should not be applied. With the exception of an unimportant area, Sinclair, by lease or the equivalent of a lease, controlled this small structure. The evidence is without conflict that the most economical way to obtain all of the recoverable gas was by the drilling of one well, the location of which Sinclair was free to determine.[2] Sinclair did not surrender the Olsen lease until months after the commencement of production from the well when a substantial percentage of all the gas in the structure had been withdrawn. In answer to the Olsens' demands to protect their lands from drainage they were advised that no decision had been reached as to further drilling, and ultimately Sinclair decided against further drilling on the structure, and surrendered the Olsen lease. Thereafter, even if the Olsens or another lessee had decided to drill, Sinclair would have already drained and sold a large portion of the gas underlying the land.

■■ The Olsens contend that their lessee, Sinclair, had an obligation and duty to refrain from doing anything which would injure their property. Under the facts of this case due regard for the interests of the lessee demonstrates that the reasons for the application of the "prudent operator" rule, which excuses a lessee from an implied covenant to drill offset wells when it is not economical to do so, are overcome. There is no question that under ordinary circumstances the "prudent operator" rule is sound and fair, but to apply that rule here permits Sinclair to keep the Olsen lease, thereby preventing exploration and development on the Olsens' land, for many months after production from and drainage through its well on the adjoining land. Ultimately Sinclair could take all of the gas underlying the Olsens' property to the same extent as though a well had been drilled thereon, without incurring any expense, and without any compensation whatever to the Olsens, even though their lease required the payment of a royalty for gas produced from their land. The Court concludes that, under facts such as these, there is an implied covenant on the part of the lessee under an oil and gas lease not to drain oil or gas from under his lessor's land. The measure of the lessor's damage is the agreed royalty on the oil or gas drained, and the reasons for permitting recovery also lead to the conclusion that the lessee cannot limit the recovery by surrendering or abandoning the lease. The Olsens are entitled to recover as their damages for breach of the implied covenant not to drain the agreed royalty, $12\frac{1}{2}\%$, times the sale price of the gas, 11¢ per MCF, times 38%, times the gas shown by the defendant's supplemental Exhibit A to have been produced up to the date of trial. Billeaud Planters, Inc. v. Union Oil Co., W.D.La., 144 F.Supp. 564, aff'd, 5 Cir., 245 F.2d 14; Geary v. Adams Oil & Gas Co., E.D.Ill., 31 F. Supp. 830; R. R. Bush Oil Co. v. Beverly-Lincoln Land Co., 69 Cal.App.2d 246, 158 P.2d 754; Phillips Petroleum Co. v. Millette, 221 Miss. 1, 72 So.2d 176, 74 So.2d 731. Cf. Hughes v. Busseyville Oil & Gas Co., 180 Ky. 545, 203 S.W. 515; Kleppner v. Lemon, 197 Pa. 430, 47 A. 353. Gerson v. Anderson-Prichard Prod. Corp., supra, is not controlling as that case was decided on the proposition that there was no proof of drainage. Further, in Barquin v. Hall Oil Co., 28 Wyo. 164, 201 P. 352, 202 P. 1107, the Supreme Court of Wyoming indicated that under a state of facts such as those in this case, the rule of Kleppner v. Lemon, supra, might be upheld, at least the Court did not close the door to such a rule.

conduct operations beyond the point where they will be profitable to him, even though the lessor will enjoy a profit. * * * "

2. It was estimated that all the recoverable gas would be taken within a period of about two years, with the largest amount of production being immediately after the well was placed on a pipe line.

■ It is contended that the Olsens waived their right to recover for the drainage because of the acceptance of the delay rental. This payment was made on March 11, 1960, and gas was first produced from the well on the adjoining land on June 13, 1960. At the time of the payment there had been neither drainage nor a breach of the implied covenants to use due diligence to protect the Olsen property from drainage and not to drain it. There was no waiver of the Olsens' rights. Cf. Orr v. Comar Oil Co., 10 Cir., 46 F.2d 59.

It is suggested that the parties collaborate in the preparation of appropriate findings of fact and conclusions of law consistent with their stipulations and this memorandum, and submit them to the Court, together with a proposed judgment, not later than January 15, 1963.