532 P.2d 590

**Gordon M. CONE and Kathleen Cone, Plaintiffs-Appellants,**

**Jewel McFarland, Involuntary Plaintiff-Appellant,**

v.

**AMOCO PRODUCTION COMPANY et al., Defendants-Appellees.**

No. 9929.

Supreme Court of New Mexico.

Feb. 21, 1975.

Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, Heidel, Samberson, Gallini & Williams, Ward & Humphrey, Lovington, Mays, Moore, Dickson & Roberts, Sweetwater, Tex., for plaintiffs-appellants.

Atwood, Malone, Mann & Cooter, Paul A. Cooter, Roswell, for defendants-appellees.

## OPINION

MONTOYA, Justice.

This is an appeal from a judgment of the District Court in Lea County in favor of the defendants.

The facts pertinent to this appeal are as follows. On August 3, 1965, plaintiff Jewel McFarland owned all the oil, gas and other minerals underlying the W–½ E–½ Section 18, Township 9 South, Range 36 East, N.M.P.M., Lea County, New Mexico (hereinafter referred to as the Cone lease). On that date she leased the land, and the lessee subsequently assigned his interest to plaintiff Gordon M. Cone, reserving a 1/32 of the overriding royalty interest. On September 13, 1966, plaintiff Cone and his wife assigned the lease to Pan American Petroleum Corporation, reserving a 1/16th of the overriding royalty interest, which included the previously reserved overriding royalty interest. Plaintiff Cone thereafter acquired the title to this previously reserved overriding royalty, therefore, he owned the full 1/16th of the interest at all times pertinent to this controversy.

After acquiring its lease, Pan American Petroleum Corporation changed its name to Amoco Production Company (Amoco). But prior to acquiring its assignment from plaintiff Cone, defendant Amoco acquired an oil and gas lease covering the E–½ E–½ of the same Section 18 from defendants, Reed and McCrory. On February 1, 1967, defendant Amoco completed its first well, the Flake Well, in the SW–¼ Section 17 which adjoined Section 18, obtaining production of oil from the Bough "C" formation. On October 11, 1967, defendant Amoco completed the Reed Well in the SE–¼ Section 18, immediately to the east of the Cone lease, also obtaining production of oil from the Bough "C" formation. At the time both wells were completed, and at all times subsequent thereto, these two wells came within the general rules and regulations of the New Mexico Oil Conservation Commission, which prescribed proration units of 40 acres. The NW–¼ SW–¼ Section 17 was the dedicated unit for the Flake Well, while the NE–¼ SE–¼ Section 18 was the dedicated unit for the Reed Well.

On October 14, 1968, plaintiff McFarland conveyed an undivided ½ mineral interest in the Cone lease to plaintiff Cone. Thus, at all times material to this controversy, plaintiff Cone owned an undivided ½ mineral interest in addition to the 1/16th overriding royalty interest. On October 29, 1968, and again on November 5, 1968, and February 27, 1969, plaintiff Cone re-

quested and made demand upon defendant Amoco to either drill a protection well on the Cone lease or surrender its lease. These demands were refused by defendent Amoco. Similar demands were made on defendant Amoco by plaintiff McFarland on December 31, 1968, and July 28, 1969, but these demands were likewise refused.

After production had been obtained on land adjoining the Cone lease to the north, defendant Amoco finally farmed out its lease to defendant Roger C. Hanks for the drilling of a well on the Cone lease. Defendant Hanks completed a well prior to May 30, 1970, situated in the NW–¼ NE–¼ Section 18. The NE–¼ Section 18 was placed in the Vada-Pennsylvania Pool of the Bough "C" formation by the New Mexico Oil Conservation Commission, with proration units of 160 acres, and the NE–¼ Section 18 was dedicated as the unit for the Hanks Well. On October 28, 1970, defendant Hanks filed his application with the New Mexico Oil Conservation Commission seeking an order force pooling all mineral interests in the NE–¼ Section 18, so as to form a proration unit of 160 acres. That application was granted, and an order was entered on February 10, 1971, force pooling the NE–¼ Section 18.

On August 6, 1971, plaintiffs filed their complaint in district court. They alleged that defendants, Amoco, et al., breached their duty under the lease of August 3, 1965. By not drilling a well in the W–½ E–½ Section 18 to offset the Reed Well and to protect plaintiffs' land from drainage, or by not surrendering the lease to let plaintiffs protect themselves, defendants failed to act as prudent operators. Plaintiffs also requested an accounting of the proceeds from the Hanks Well.

This matter was tried before the court without a jury. On April 16, 1973, the court entered judgment granting plaintiffs' prayer for an accounting against defendants, Hanks and Lacy Armour, for all proceeds from the production of the Hanks Well attributable to plaintiffs' royalty interests from the commencement of production to October 28, 1970. Plaintiffs were denied any further relief. On May 11, 1973, they filed a timely notice of appeal from that portion of the judgment holding that defendant Amoco properly refused the demands of plaintiffs to drill a protection well or surrender its lease; that the Reed Well, the well drilled by defendant Amoco on the lease adjoining the Cone lease, had not drained substantial amounts of oil and gas from the Cone lease; and that defendant generally acted as a prudent operator in all matters concerning the Cone lease.

On appeal plaintiffs raise three points, two of which are stated in their brief in chief as follows:

"POINT I

"AN OIL AND GAS LESSEE OF TWO ADJOINING LEASEHOLDS, HAVING DRILLED ONE LEASEHOLD, HAS A DUTY TO DRILL AN OFFSETTING WELL ON THE ADJOINING LEASEHOLD TO PROTECT IT FROM DRAINAGE OR SURRENDER THE LEASE OR FARM OUT THE LEASE FOR PROTECTION.

"THE TRIAL COURT ERRED IN FAILING TO APPLY THIS STANDARD IN DETERMINING THE LIABILITY OF APPELLEE AMOCO PRODUCTION COMPANY.

"POINT II

"APPELLEE HAD A DUTY TO OBTAIN UNITIZATION OF THE ACREAGE OR PAY A COMPENSATORY ROYALTY AND THE TRIAL COURT ERRED IN NOT APPLYING THIS STANDARD."

These two contentions involve implied covenants to protect leased land from drainage in the limited situation where there is a common lessee of two separately owned adjoining tracts of land. There is no statutory law or case law in New Mexico on this point. Other jurisdictions are divided as to the extent of the duty to be imposed on the lessee in such a situation.

Some states have applied what is termed the "prudent operator" rule. Breaux v. Pan American Petroleum Corporation, 163 So.2d 406 (Ct.App.La.1964), cert. denied, 246 La. 581, 165 So.2d 481 (1964). Succinctly stated, this rule says that it is the duty of the lessee to prevent substantial drainage of oil or gas from the leased land, when an offset well could be drilled which would produce oil or gas in paying quantities. 5 Williams and Meyers, Oil & Gas Law, § 821 at 78 (1972). On the other hand, other jurisdictions expressly reject the prudent operator rule in this limited factual situation and establish a more liberal rule. Phillips Petroleum Company v. Millette, 221 Miss. 1, 72 So.2d 176, 74 So.2d 731 (1954); R. R. Bush Oil Co. v. Beverly-Lincoln Land Co., 69 Cal.App.2d 246, 158 P.2d 754 (1945). According to the reasoning of these cases, a common lessee has a duty to prevent substantial draining of the leased land, regardless of whether or not the drilling of an offset well would be a prudent operation, i. e., produce oil or gas in paying quantities.

Another concept expressed in the Breaux case, supra, provides that where there is a common lessee of two adjoining tracts, and he maintains a well on one that is draining both, he may avoid the obligation of drilling a protection well by obtaining a unitization of the two tracts. Thus, the nonparticipating lessor can share in the production of the well. This view was adopted in the case of Williams v. Humble Oil & Refining Company, 432 F.2d 165 (5th Cir. 1970), cert. denied, 402 U.S. 934, 91 S.Ct. 1526, 28 L.Ed.2d 868 (1971), where the court stated that in this particular factual situation, the lessor may recover damages where he alleges and proves that the lessee could have created a pooling unit under which the lessor could have shared in the production of oil and gas from the common reservoir. Plaintiffs also contend that in the common lessee situation, if drainage is proven, there is a further obligation. If an offset well is not drilled, or unitization not accomplished, then the lessee should either farm out the lease or surrender it to properly protect the lessor's interest.

■ Irrespective of which standard of duty is imposed upon the lessee, or which remedies are available to the lessor, it is essential that there must first be proof of substantial drainage. This rather illusive term was defined to a limited extent by the court in Monsanto Chemical Company v. Andreae, 245 Miss. 11, 19, 147 So.2d 116, 119 (1962):

"* * *. [T]he question is, what is a substantial drainage? Substantial is a relative term and the meaning of it is to be determined with regard to all of the surrounding facts and circumstances. * * *"

We must then consider the trial court's finding No. 22:

"It does not appear that the Reed Well has drained any oil or gas from under the leased land, but if it has, that drainage has not been substantial."

In order for this finding to be overturned there must be a showing of a lack of substantial evidence. As we stated in Tome Land & Improvement Co. v. Silva, 83 N.M. 549, 552, 494 P.2d 962, 965 (1972):

"It is well settled in New Mexico that the appellate court will not substitute its judgment for that of the trial court in weighing the evidence. If the trial court's findings are supported by substantial evidence, they must be affirmed. Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970). Substantial evidence means such relevant evidence as a reasonable mind might find adequate to support a conclusion. Cave v. Cave, supra."

■ A review of the record reveals that a great deal of evidence was presented and testimony elicited concerning the question of drainage from the Cone lease, a substantial amount of which supported the trial court's finding. Some of the evidence included testimony that the production history of the Reed Well indicated that it was

not a typical Bough "C" formation well; that the Reed Well might be an isolated reservoir separated from the Hanks Well; that there were different bottom hole pressures in the Reed and Hanks Wells; all of this evidence indicating an absence of drainage from the Cone lease. With due regard for "all the surrounding facts and circumstances," the trial court's finding No. 22 is supported by substantial evidence. Thus, it cannot be overturned by this court. Therefore, we may dispose of this matter without even reaching plaintiffs' related contentions regarding the subsequent duty of the lessee, since they are totally dependent on an initial finding of substantial drainage.

The decision of the trial court is affirmed.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.